Weis *v.* The City of Madison.

———◆——

No. 6713.

WEIS *v.* THE CITY OF MADISON.

CITIES AND TOWNS.—*Grading Public Street.—Consequential Damages.—Appropriation.—Constitutional Law.*—Consequential damages, resulting from the grading of a public street, do not constitute a taking or appropriation of property, within the meaning of the constitution.

SAME.—*Authorized Improvement.—Reasonable Care.—Injury to Property of Adjacent Proprietors.*—Where an improvement of a street in a city is one which the city has authority to make, and reasonable care is used in doing the work, no liability attaches, although injury may be done to the property of adjacent proprietors.

PLEADING.—*Actionable Negligence.*—Negligence or no negligence must be determined from the facts pleaded, not from the presence or absence of general epithets.

SURFACE-WATER.—*Municipal Corporations.*—A municipal corporation has no right to collect surface-water in an artificial channel, and pour it in a body upon the adjacent land of another.

SAME.—*Cities and Towns.—Public Highways.—Embankments and Outlets.*—A city may divert surface-water from the public highways, and, to do so, may build embankments or enlarge outlets.

SAME.—*Dominion Over Highways.*—A municipal corporation is entitled to exercise dominion over the public highways, and is not liable for so exercising this right as to change or divert the flow of surface-water.

SAME.—*Watercourse.*—A natural watercourse is a stream of water flowing in a certain direction, through a defined channel, with bed and banks. The channel may sometimes be dry, but there must be substantial indications of the existence of a stream, ordinarily a moving body of water.

SAME.—*Ravines.*—Ravines, through which surface-water runs in times when there are heavy rainfalls, are not natural watercourses.

SAME.—*Obstruction of Natural Watercourse.—Liability.*—If a natural watercourse is wrongfully obstructed, there is a plain liability.

SAME.—*Flow Upon Lots Below Adjacent Streets.—City.—Damages.*—If surface-water flow upon a lot because of its being below the level of adjacent streets or lots, the owner can not recover damages from the city.

VOL. 75.—16

Weis *v.* The City of Madison.

SAME.—*Municipal Corporations.—Legislative Power.—Ministerial Acts.—Negligent Performance.*—A municipal corporation is not liable for the exercise of a legislative power, but is liable for the negligent performance of ministerial acts.

SAME.—*Collecting and Flowing of Surface-Water.*—Collecting surface-water into one channel, and causing it to flow upon another's land, is an actionable injury, being a ministerial and not a legislative or judicial act.

SAME.—*Defect of Plan.*—For a defect in the mere plan or system of removing surface-water from a street, there is no liability so long as the ministerial work of carrying into effect the plan is not undertaken.

SAME.—*Pleading.—Action Against City for Damages.—Complaint.*—A paragraph of complaint against a city, which alleges with reasonable certainty, that the municipal authorities did, by the improvement of a street, collect in one channel the surface-water falling upon divers streets, and flow it against an insufficient culvert, and thus unlawfully cast the water in a body upon the private property of the plaintiff, contains facts sufficient to constitute a cause of action.

SAME.—*Insufficient Evidence.*—On trial of such an action, the court did right in directing a verdict for the defendant, where the evidence showed that plaintiff had suffered no material damage from overflow before the city enlarged the culverts and drains complained of; that, before such action of the city, the natural tendency of the surface-water was to flow by without damage; and that his property is at the foot of "high hills," where in times of rain the water comes down the ravine in "immense quantities."

PRACTICE.—*Verdict.—Court May Direct.*—There are cases where the court may rightfully direct a verdict.

SAME.—*Verdict Against Law and Evidence.*—A judge is not bound to submit a question to a jury, where their verdict, if contrary to his views of the evidence and its legal effect, would be certainly set aside as clearly against the law and the evidence.

SAME.—Courts interfere only in cases where it is manifest that there is no evidence upon which a verdict could legally rest.

SAME.—*Exception.—Leave to State in Writing.*—An exception must be reduced to writing when taken, or leave must be obtained to afterward state it in writing.

SAME.—A plaintiff can not state one cause of action and recover upon another.

From the Jefferson Circuit Court.

*J. Roberts, E. R. Wilson* and *J⁷ Francisco,* for appellant.
*J. W. Linck, C. E. Walker* and *W. S. Roberts,* for appellee.

ELLIOTT, J.—Appellant was the plaintiff below, and sought a recovery for injuries to his property, alleged to have resulted from the wrongful acts of appellee, in improving streets and constructing drains and culverts. Upon the close of appellant's evidence, the court, on motion of the appellee, instructed the jury to return a verdict in favor of the latter. The appellee demurred to each of the three paragraphs of the appellant's complaint, and these demurrers were overruled. Appellant assigns error upon the ruling denying his motion for a new trial, and appellee has assigned cross errors upon the overruling of the demurrers to the complaint.

Counsel have argued the sufficiency of the complaint, upon the theory that if there was a bad complaint it is immaterial whether there was or was not error in overruling appellant's motion for a new trial. We need not decide whether this is or is not a correct doctrine, but, as it is a more convenient method of considering the principal question in the case, we shall first consider the ruling upon the demurrers.

The first paragraph of the complaint alleges that the appellant was the owner of certain real estate in the city of Madison ; that, to quote the language of the complaint, "the defendant, not regarding the rights of the plaintiff in the premises, constructed, and caused to be constructed, on and along the streets in said city lying north of plaintiff's premises, ditches and drains, so as to gather together out of their natural and proper channels, and accumulate into one body and stream, all the water for a long distance, northwardly and westwardly of plaintiff's property, to wit, for the distance of two hundred yards, and did also construct and maintain a culvert under and across said street north of and upon the high ground running northwardly from said lots, in such a manner that said waters, so accumulated and collected out of their natural course and channels, were made to and did overflow" plaintiff's property.

The second paragraph, after alleging ownership and situation of appellant's property, avers "That, north of said lots of plaintiff, there was and still is a street, under the control and supervision of the defendant, upon ground much higher than plaintiff's lots ; that defendant, in constructing and repairing said street, has diverted the water on the north side of said street from its natural channel and courses, and caused the same to flow down said street on the north side thereof, until opposite said lots, where it was discharged into a small culvert or passage way, constructed by defendant, under and across said street, toward plaintiff's lot, but which said culvert or passage way had for a long time been closed, so that but little water passed through and upon the lots of plaintiff, so that the quantity discharged through the same passed off to a natural stream south of said lots, without doing any material damage to plaintiff's lots ; that afterward defendant caused said ditches to be widened, extended and deepened, so as to accumulate a larger body of water on the north side of said street than would naturally flow thereon, and also caused said culvert or passage way to be reconstructed upon a greatly enlarged scale, and constructed the same very much larger than it ever was before, and thereby permitted and caused every time it rained a much larger quantity of water to flow through the same, and thus cast it upon plaintiff's lots."

The third paragraph, after alleging ownership and describing plaintiff's property, proceeds as follows : "Thus defendant, in constructing a street northwestwardly from said lots, and running near them on ground much higher than said lots, had so constructed the drains and culverts under said street southwardly towards the same as to wrongfully collect a large body of water, whenever it rained, on the north side of said street, and instead of permitting it to flow and pass off in its natural courses, to flow through said culvert and discharge its currents over and upon the plaintiff's lots."

We have copied, from the various paragraphs of the complaint, all the allegations charging, or attempting to charge, an actionable wrong against the appellee, omitting the merely formal parts and the allegations of loss and injury.

The argument of appellee attacks the complaint upon the ground that it fails to show any facts constituting culpable negligence upon the part of the municipal authorities. In answering the appellee the appellant insists that the acts of the city authorities were of such a character as constituted a taking and appropriation of appellant's property within the meaning of the constitution, and cases are cited lending the position some support. *Inman* v. *Tripp*, 11 R. I. 520, S. C., 17 Albany L. J. 12, is, as counsel assert, a strong case in appellant's favor, but the force of that case is very greatly weakened, if not altogether broken down, by the later case of *Wakefield* v. *Newell*, 12 R. I. 75. It is not, however, necessary to discuss this point at length, for it is the firmly settled law of this State that consequential damages, resulting from the grading of a public street, do not constitute a taking or appropriation of property, within the meaning of the constitution. *Macy* v. *The City of Indianapolis*, 17 Ind. 267; *The City of Lafayette* v. *Bush*, 19 Ind. 326; *The City of Vincennes* v. *Richards*, 23 Ind. 381; *Snyder* v. *The President, etc.*, 6 Ind. 237. The doctrine of these cases is sustained by the overwhelming weight of authority, and is founded upon fundamental principles.

The appellee argues with much ability, that the complaint is bad because it does not charge that the municipal authorities were guilty of negligence in making the changes and improvements which caused the injury for which a recovery is sought. It is contended that the municipal authorities had a right to make the improvements described in the complaint, and that, if they acted with reasonable care the corporation is not responsible for consequential damages to the adjacent property. It is true, as appellee maintains, that

where the improvement is one which the city has authority to make, and reasonable care is used in doing the work, no liability attaches, although injury may be done to the property of adjacent proprietors. The cases cited from our own reports fully establish this doctrine, and they are in harmony with the almost unbroken current of authority. Dillon Municipal Corporations, sec. 990, and note. The rule under mention prevails where there is no statutory provision declaring a different one, and our statute does not, it is obvious, apply to such a case as that which, as appellant contends, the present complaint makes. The rule pronounced in *The City of Logansport* v. *Pollard*, 50 Ind. 151, does not apply to a case of such a character as that which now occupies our attention.

The question of negligence or no negligence is to be determined from the facts pleaded, and the presence or absence of general epithets adds no real force to the facts stated. If the facts stated are sufficient to show negligence, the absence of epithets does not impair their force; if they are not sufficient, no mere epithets can supply the want. The question is here, as in all cases, do the facts pleaded show that the appellee was guilty of actionable negligence?

The case of *Inman* v. *Tripp*, *supra*, is much relied upon by the appellant, but upon the point under immediate consideration, as upon the preceding one, the force of the opinion is much impaired by the subsequent holding in the later case of *Wakefield* v. *Newell*. In the last case the court said: "In *Inman* v. *Tripp*, 11 R. I. 520, we did not mean to decide that a town or city has any less power over its streets or highways, in respect of surface-water, than an individual has over his own land, but only that it has no greater power." The case so confidently built upon can not, therefore, be allotted the force attached to it by appellant. While it is true that the case does not go quite so far as counsel claim, it nevertheless does hold that a municipal

corporation has no right to collect surface-water in a chan-
nel and pour it upon the land of another, and to this extent
the later case expressly approves the earlier.

In *Ashley* v. *The City of Port Huron*, 35 Mich. 296, it
was held that a municipal corporation is liable for construct-
ing a sewer in such a manner as to collect large quantities of
water and flow it upon plaintiff's land. In the case last
named, the distinction between consequential and direct in-
juries is clearly and forcibly drawn, as well as the distinc-
tion between legislative and ministerial acts. The question
under discussion received a very full and careful examination
in *Wilson* v. *City of New Bedford*, 108 Mass. 261, and it
was there held that the city was liable for damages caused
by the escape of water from an artificial reservoir in which
it had been collected by the municipal authorities. In *Ry-
lands* v. *Fletcher*, L. R., 3 E. & I. Ap. Cas. 330, water had
been collected in an artificial reservoir, from which it flowed
into plaintiff's mine, and it was held that an action would
lie. It was there said by Lord CRANWORTH: "If a person
brings, or accumulates, on his land anything which, if it
should escape, may cause damage to his neighbor, he does so
at his peril." In *Gillison* v. *City of Charleston*, 16 W. Va.
282, it was held that an action would lie against a municipal
corporation for collecting and casting surface-water in a body
upon the lands of an adjacent owner.

The Supreme Court of Illinois has declared and enforced
the same doctrine in quite a number of cases. *The City of
Aurora* v. *Reed*, 57 Ill. 29; *The City of Dixon* v. *Baker*,
65 Ill. 518; *City of Jacksonville* v. *Lambert*, 62 Ill. 519;
*City of Aurora* v. *Gillett*, 56 Ill. 132.

The subject came under review in *O'Brien* v. *City
of St. Paul*, 25 Minn. 331; S. C., 33 Am. R. 470. A dis-
tinction was there drawn between the cases where the effect
of grading and improving was to throw surface-water on the
lands of others, but where there was no confinement in chan-

nels, and those in which surface-water was collected in arti-
ficial channels, and thereby caused to flow in a body upon
the lands of others, and it was held that a municipal cor-
poration may not collect surface-water in artificial channels
and pour it upon the property of adjacent proprietors. The
courts of Iowa and Wisconsin have sanctioned the general
doctrine declared in the case last cited. *Ellis* v. *Iowa City*,
29 Iowa, 229 ; *Templin* v. *Iowa City*, 14 Iowa, 59 ; *Ross*
v. *The City of Clinton*, 46 Iowa, 606 ; *Pettigrew* v. *The
Village of Evansville*, 25 Wis. 223.

EARL, J., in *Lynch* v. *The Mayor*, etc.,76 N.Y. 60, exam-
ines and distinguishes between the cases decided by the Court
of Appeals, placing in one class *Byrnes* v. *The City of Cohoes*,
67 N. Y. 204, and *Bastable* v. *City of Syracuse*, 8 Hun, 587,
and in another class cases such as *Wilson* v. *The Mayor*,
etc., 1 Denio, 595, and *Mills* v. *The City of Brooklyn*, 32
N. Y. 489, and expressly approves the doctrine laid down
by each class. In concluding his examination of the cases,
the learned judge said : ''Each owner may improve his lot,
and protect it from surface-water. He may not collect such
water into a channel, and throw it upon his neighbor's lot.''
The rule as approved by the New York courts is thus stated
in *Byrnes* v. *The City of Cohoes:* ''Diverting the water
from its natural course so as to throw it upon the plaintiff's
premises, without providing any outlet, and thus injuring
his building, was a wrong for which he was entitled to re-
dress. The cases cited on the part of the appellant to the
effect that a municipal corporation is not liable for an omis-
sion to supply drainage or sewerage, do not apply to a case
where the necessity for the drainage or outlet is caused by
the act of the corporation itself.''

The cases are, however, not harmonious. There is indeed,
a stubborn conflict; but the weight of authority is strongly
in favor of the doctrine, that a municipal corporation has no
right to collect surface-water in an artificial channel, and

cast it in a body upon another's land. Judge DILLON has given the subject some consideration, and, as the result of his research and deliberation, states this conclusion : "There will be a liability if the direct effect of the work, particularly if it be a sewer or drain, is to collect an increased body of water, and to precipitate it on to the adjoining private property, to its injury. But since surface-water is a common enemy, which the lot-owner may fight by raising his lot to grade, or in any other proper manner, and since the municipality has the undoubted right to bring its streets to grade, and has as much power to fight surface-water in its streets as the adjoining private owner, it is not ordinarily, if ever, liable for simply failing to provide culverts or gutters adequate to keep surface-water off from adjoining lots *below grade*, particularly if the injury is one which would not have occurred had the lots been filled so as to be on a level with the street." 2 Dillon Municipal Corp., 3d ed., sec. 1051. This we regard as a clear and correct statement of the rule supported by the decided weight of authority.

While the precise question presented has never been expressly decided by this court, yet there are several cases declaring substantially the same general doctrine as that contained in the cases to which we have here given our approval. In *Templeton* v. *Voshloe*, 72 Ind. 134, it was held that one land-owner had no right to collect water in an artificial channel and cause it to be discharged in a body upon another's land. In *The Cairo, etc., R. R. Co.* v. *Stevens*, 73 Ind. 278, it was held that a land-owner had a right to fight off surface-water from his own land. The decision in *Taylor* v. *Fickas*, 64 Ind. 167, is to the same effect. *Schlichter* v. *Phillipy*, 67 Ind. 201, holds that, for obstructing a natural watercourse, an action will lie, but that no action will lie for obstructing, on land owned by the person who erects the obstructions, the natural flow of surface-water. The conclusion fairly deducible from our own cases accords with the

rule which we have already stated as that maintained by the great weight of authority.

The facts stated in one paragraph, at least, of the complaint are, therefore, to be regarded as showing, not a mere consequential injury, resulting from the exercise of a lawful power, but a direct injury by confining in an artificial channel, and pouring upon appellant's land, the surface-water which, before the construction of the drains, flowed off without injury to the plaintiff's property.

It is, however, argued by the appellee, that the municipal authorities did construct a culvert, and that, as it is not shown that there was any negligence or unskilfulness, there is no liability. It is said by counsel that a municipal corporation is not liable for a mere defect in the plan of its public work, but solely for negligence in doing the work. Judge DILLON says: "Where the injury is occasioned by the *plan* of the improvement, as distinguished from the mode of carrying the plan into execution, there is not ordinarily, if ever, any liability." 2 Dillon Municipal Corporations, sec. 1051, 3d ed. This doctrine is probably that of the majority of the adjudged cases, and if we are to understand that it refers to the mere plan of the improvement, without reference to the performance of work under it, there can be no question as to the correctness of the rule as stated. There is, however, a broad and plain distinction between judicial or legislative acts and ministerial ones. The construction of a plan may be a judicial act; the performance of the work is certainly a ministerial act. This court has repeatedly recognized and enforced the doctrine, that a municipal corporation is not liable for the exercise of a legislative power, but that it is liable for the negligent performance of ministerial acts. *Stackhouse* v. *The City of Lafayette*, 26 Ind. 17; *The City of Logansport* v. *Wright*, 25 Ind. 512; *Roll* v. *The City of Indianapolis*, 52 Ind. 547.

The question in the present case is whether the acts

charged in the complaint show merely the exercise of legislative power in devising a plan, or whether they are to be regarded as showing negligence or want of skill in the ministerial work of constructing the culvert. It is certain, from the facts alleged in at least one of the paragraphs of the complaint, that the culvert was of insufficient capacity; and it is equally certain that the municipal authorities had collected and confined, in artificial channels, great bodies of water, and caused them to flow in one volume to this insufficient culvert. As clearly appears from the cases we have cited, the collection of the water into one channel, and causing it to flow upon another's land, is an actionable injury. It is certainly a ministerial and not a legislative or judicial act. In this case, however, as one at least of the paragraphs of the complaint shows, the insufficiency of the culvert, and not the collection of the waters into one body, was the proximate cause of the injury. It is not alleged that there was any defect in the mechanism of the culvert, but it is charged that the size was inadequate to carry off the volume of water which had been collected and conducted to it by the municipality. The case of *City of Indianapolis* v. *Huffer*, 30 Ind. 235, is in point in appellant's favor, for it was there held that "The skill and care which is incumbent relates as well to the capacity of the sewer as to the mere mechanism in its construction—as well to its plan as to its execution."

The appellee assails this case with vigor and ability, and it is maintained that a mistake as to the plan never creates a liability. The appellee barely notices, neither approving nor condemning, the case of *The City of Indianapolis* v. *Lawyer*, 38 Ind. 348, and yet that case is quite as strongly against it as the earlier one. It was there held, "that as the city had accumulated, by its system of drainage, such vast quantities of water at the point in question, it would be under obligation to see to it that there was a way provided for the

water to escape without damage to adjoining property own-
ers.'' In *The City of Indianapolis* v. *Tate*, 39 Ind. 282, the
case from which we have quoted is fully approved. It is true
that the cases we have cited are not very easily reconciled with
the earlier case of *The City of Vincennes* v. *Richards*, 23 Ind.
381, but the facts are there so meagrely stated that we can
not determine whether the water was gathered into one chan-
nel and thus cast upon the plaintiff's land, or whether the
corporation merely fought the surface-water off of its own
streets.   At all events, the later cases expressly consider and
decide the precise point now under discussion, and must be
regarded as expressing the rule of law governing all actions
of like character.   Outside of our own State, the authorities
upon this subject are in hopeless conflict.   There is one
point upon which all are agreed, and that is, that for a defect
in the mere plan or system there is no liability so long as
the ministerial work of carrying into effect the plan is not
undertaken.   There are many and respectable authorities
sustaining the view adopted by this court.   The opinion of
Judge Dillon, announced after a careful, exhaustive and dis-
criminating review of all the authorities, is in substantial
harmony with that prevailing in our State.   Says this learned
author in the last edition of his great work: ''It is, per-
haps, impossible to reconcile the cases on this subject; and
courts of the highest respectability have held that if the
sewer, *whatever its plan*, is so constructed as to cause a
positive and direct invasion of the plaintiff's private prop-
erty, as by collecting and throwing upon it, to his damage,
water which would not otherwise have flowed or found its
way there, the corporation is liable.   This exception to the
general doctrine, when properly limited and applied, seems
to be founded on sound principles and will have a salutary
effect in inducing care on the part of the municipality to
avoid such injuries to private property, and will operate
justly in giving redress to the sufferer if such injuries are

inflicted." 2 Dillon Municipal Corporations, sec. 1047. Justice requires that a municipal corporation which collects into one channel and conducts a great body of water to the lands of another should provide suitable outlets for it, and not cast it upon such land. Whether the failure to provide means of escape is due to the inadequacy in size of culverts or sewers, or to the defective mechanism, is not material. The duty of the corporation is to provide proper means of escape, and this duty extends both to capacity and mechanism. It is stretching the doctrine of immunity from liability for consequential injuries to an unwarranted extent to hold that if the mechanism is perfect, there is no responsibility, no matter how greatly disproportionate and inadequate the size and capacity of the culvert is to the volume of water led to and poured against it by the drains of the municipality. It is the plain duty of the corporation, when it confines water in one channel, to see to it that suitable provision is made for the escape of the water into natural watercourses or other channels which will carry it off without injury to private property.

The complaint does not state a cause of action for obstructing a natural watercourse. There was no existing watercourse within the meaning attached to that term by courts and law-writers. A watercourse is a stream of water ordinarily flowing in a certain direction, through a defined channel, with bed and banks. It is not necessary that the water should flow continually; the channel may sometimes be dry. There must, however, always be substantial indications of the existence of a stream, which is ordinarily and most frequently a moving body of water. *Luther* v. *The Winnisimmet Co.*, 9 Cush. 171; *Fryer* v. *Warne*, 29 Wis. 511; *Schlichter* v. *Phillipy, supra.* There is nothing showing that there was an obstruction or diversion of any natural watercourse. If a natural watercourse is wrongfully obstructed then there is a plain liability.

Tested by the principles we have declared to be correct,

one at least of the paragraphs of the appellant's complaint must be held good. The paragraph which we deem sufficient is the first. Although not well drawn it still shows with reasonable certainty that the municipal authorities did collect in one channel the surface-water falling upon divers streets, and flow it against, rather than through, an insufficient culvert, and thus wrongfully cast the water in one body upon the private property of the appellant. We have concluded, not without much hesitation, that the second and third paragraphs can not be upheld, and we therefore adjudge them bad.

We come now to the questions presented by the errors alleged upon the ruling denying appellant's motion for a new trial. There are cases where the court may rightfully direct a verdict. A judge is not bound to submit a question to a jury, where their verdict, if contrary to his views of the testimony and its legal effect, would be certainly set aside, as clearly against the law and the evidence. *Dryden* v. *Britton*, 19 Wis. 31; *Godin* v. *The Bank*, etc., 6 Duer, 76; *Lane* v. *Old Colony*, etc., *R. R. Co.*, 14 Gray, 143; *Improvement Co.* v. *Munson*, 14 Wal. 442; *Jewell* v. *Parr*, 13 C. B. 909; *Parks* v. *Ross*, 11 How. 362; *Pleasants* v. *Fant*, 22 Wal. 116; *Dodge* v. *Gaylord*, 53 Ind. 365, 377.

Courts do not, however, undertake to weigh evidence for the purpose of ascertaining in whose favor it preponderates, nor do they undertake to pass upon questions affecting the credibility of witnesses. In short, they interfere only in cases where it is manifest that there is no evidence upon which a verdict could legally rest. Our inquiry then is, not what was the degree or weight of the testimony introduced by the appellant, but was there any evidence sustaining the material facts constituting his alleged right of action? Appellant thus presents his claim:

"We think that the evidence shows, by a fair preponderance, the following state of facts:

"1st. That, before the improvements and enlargement of the culverts and drains testified about and complained of, the plaintiff suffered no material damage from overflow. The witnesses, almost to a man, say that they heard no complaint from anybody until after the action of the city in enlarging the culverts, etc. ; and it is reasonable to presume from the evidence that there was no damage before this, from the fact that there was a drain or sewer connecting the old culvert with "Crooked Creek," the outlet of the water across plaintiff's lot, of the same size as the old culvert ; whereby it would seem impossible for the premises to have been overflowed before the enlargement, as this connecting sewer, being of the same size as the old culvert, would naturally carry off all the water. But, at any rate, we think the evidence shows that there was no material damage until after the action of the city in the premises.

"2d. The evidence shows, by a fair preponderance, that before the action of the city, etc., the natural tendency of the water from the ravine and gutters was to flow eastwardly of the plaintiff without damage to him ; or, at all events, whatever may have been its outlet, there was no damage to plaintiff of consequence on account of it.

"3d. It appears fairly from the evidence, that the plaintiff's property is situated in the bottom below the culvert and Michigan Road, and that the hills rise high on the north side of it ; that, in times of rain, the water comes down the ravine in 'immense quantities,' 'sufficient to carry a horse off his feet ;' that, according to the admissions of defendant in her answer, the point complained of by plaintiff is at the foot of the 'high hills' surrounding the city of Madison."

We shall notice and dispose of these points in the order in which they are presented :

1st. The corporation, by merely making the culvert larger, did not invade any rights of the appellant. The corporation had the same rights to conduct from its streets

surface-water as an individual has to conduct surface-water from his lands. It does not appear that the city had collected the surface-water into one body and caused it to flow to this culvert. Upon the contrary, the clear inference— the only reasonable inference—is, that the city officers had done nothing more than repair the public streets, in a lawful and careful manner. The city had an undoubted right to fight surface-water from the public highways, and, for this purpose, might build embankments or enlarge outlets. Corporations, as we have already seen, are only liable in cases where they collect the surface-water into an artificial channel, and pour it in a body upon the property of another. It does not appear but that the change in the adjacent country caused the increased flow of surface-water; at all events, it does not appear that the city had wrongfully invaded the rights of the appellant.

2d. It may be true that the evidence does tend to show that the repair of the streets did change the flow of the water. If this were fully granted, it would not make a case for the appellant. No action will lie for merely elevating or depressing land, and thus changing the flow of surface-water. A municipal corporation is entitled to exercise dominion over the public highways, and is not liable for so exercising this right as to change or divert the flow of surface-water. The rule upon this subject is thus expressed by BIGELOW, C. J., in *Gannon* v. *Hargadon*, 10 Allen, 106 · "The obstruction of surface-water or an alteration in the flow of it affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil." In *Hoyt* v. *The City of Hudson*, 27 Wis. 656, S. C., 9 Am. Rep. 473, it was held that a municipal corporation had the same rights to divert or obstruct the flow of surface-water as a natural person, and that, for an obstruction or diversion caused by the grading and improvement of

streets, there is no liability unless negligence is shown. But we need not multiply citations, for the question may be regarded as fully settled by the decisions of this court. In the most recent of our cases, the court approved and adopted Judge DILLON's doctrine, laid down in section numbered 1039 of the last edition of his work on municipal corporations. *The Cairo, etc., R. R. Co.* v. *Stevens, supra.*

3d. We can not understand what benefit the appellant can reasonably expect from the facts which he assumes in his third proposition were established by the evidence. If it is meant that the facts stated entitled him to a recovery upon the ground that the city authorities had obstructed or interfered with a natural watercourse, then the conclusion is erroneous, because no facts are stated in the complaint showing that there was any natural watercourse. A plaintiff can not state one cause of action and recover upon another. The facts assumed do not, however, show that there was any natural watercourse. Ravines, through which surface-water runs in times when there are heavy rainfalls, are not natural watercourses. To constitute a natural watercourse, there must be a bed and banks and evidences of a permanent stream of running water. *Hoyt* v. *The City of Hudson, supra; Howard* v. *Ingersoll,* 13 How. 381, 427. Nor is there anything in the facts stated showing that appellee had any agency in bringing the water from the high hills north of appellant's lots. If the evidence shows anything materially affecting the case, it is diretly and strongly against appellant, for the reason that it shows that the water came upon appellant's lot because of its being below the level of the surrounding lands. If the water did flow upon his lot because of its being below the level of adjacent streets or lots, there could be no recovery. We are satisfied that the court did right in directing a verdict for the appellee.

Following the order of discussion pursued by counsel, we come now to the remaining point made by appellant. It is

insisted that the court erred in excluding certain testimony offered by the appellant. The question, as to whether there was or was not error in excluding this testimony, is not properly before us, for the reason that the exception was not reduced to writing, nor was any time asked or granted in which to put it in writing. An exception must be reduced to writing when taken, or leave must be obtained to afterward state it in writing. . *Sohn* v. *The Marion and Liberty Gravel Road Co.*, 73 Ind. 77 ; *Goodwin* v. *Smith*, 72 Ind. 113.

The judgment is affirmed, with costs.