No. 9509.

HEBRON GRAVEL ROAD COMPANY v. HARVEY.

WATERCOURSES.— *Definition of.— Obstruction.— Damages.— Surface Water.*—
A lake fed by streams, the waters of which in times of flood find exit by
rapid percolation through a bed of gravel, so that there is a sensible
current towards the gravel bed, is a running stream, and not merely sur-
face water, and one who obstructs the flow to such place of discharge,
and thereby causes the water to overflow the lands of another, is liable
for the consequent damages.

From the Superior Court of Tippecanoe county.

*R. C. Gregory* and *W. B. Gregory*, for appellant.

*R. P. Davidson* and *J. C. Davidson*, for appellee.

BICKNELL, C. C.—This was an action by the appellee
against the appellant to recover damages.

The complaint averred, in substance, that the plaintiff
owned land adjacent to a large stream of running water called
Headly's lake, which had its outlet over low grounds and
through a gorge eastward to Burnett's creek, and did not
overflow the plaintiff's land; that in 1868 a former com-
pany built a gravel road, and made an embankment across
said low grounds and gorge, and put under it an insufficient
culvert; that afterwards, the defendant became the owner of
said gravel road, and removed the culvert and raised the em-
bankment, so that it confined the waters of said lake, whereby
the waters were thrown back upon ten acres of the plaintiff's
arable land in times of heavy rainfalls, and the plaintiff's
crops were destroyed, to his damage, $600.

A demurrer to this complaint, for want of facts sufficient,
was overruled.

The defendant answered by a general denial. The issue
was tried by a jury, who found for the plaintiff, with $220
damages. Judgment was rendered upon the verdict over a
motion for a new trial by the defendant, and the defendant
appealed.

The errors assigned are the following:

1. Overruling the demurrer to the complaint.

2. Overruling the motion for a new trial.

The reasons alleged for the new trial were:

1. That the verdict is not sustained by sufficient evidence.

2. That the verdict is contrary to law.

3. Error in giving instructions asked by the plaintiff, numbered 1, 2, 3, 6, 7, 8 and 9, and in giving instructions Nos. 5 and 11 as modified, and in refusing to give instructions asked by the defendant numbered I and IV.

The appellant in his brief does not discuss separately any of the errors assigned. He says: "The three questions presented, 1st, The want of facts sufficient in the complaint; 2d, The want of sufficient evidence; 3d, Error of the court in the charge to the jury, will be presented together."

But he points out no particular defect in the complaint, nor does he call our attention to any specific error in the instructions, and although he refers to certain testimony as tending to show that the water thrown back upon the plaintiff's land was merely surface water, he does not show that there was no testimony tending to sustain the verdict. The real question in controversy is this: Was the body of water called Lake Headly a running stream, or was it mere surface water? The law is well settled in Indiana that for obstructing a natural watercourse an action will lie, *Weis* v. *City of Madison*, 75 Ind. 241 (39 Am. R. 135), but a land-owner has a right to ward off surface water from his own land. *Cairo, etc., R. R. Co.* v. *Stevens*, 73 Ind. 278 (38 Am. R. 139); *Taylor* v. *Fickas*, 64 Ind. 167 (31 Am. R. 114); *Benthall* v. *Seifert*, 77 Ind. 302; *Cairo, etc., R. R. Co.* v. *Houry*, 77 Ind. 364. The complaint does not show that the body of water obstructed was mere surface water. It states that it was a large stream of running water, having its outlet over low grounds and through a gorge eastward to Burnett's creek, and that such outlet was obstructed by an embankment built across said low grounds and gorge.

There was no error in overruling the demurrer to the complaint.

In the case of *Taylor* v. *Fickas, supra,* this court said: "The true doctrine in such a case, we believe, was expressed by the CHANCELLOR in the case of *Earl* v. *DeHart,* 1 Beasley, 280 : 'If the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is regularly discharged through a well-defined channel, which the force of the water has made for itself, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural watercourse.'" This language was also quoted with approval in the subsequent case of *Schlichter* v. *Phillipy,* 67 Ind. 201.

Upon this subject the court instructed the jury as follows:

"If you find from the evidence that the so-called Lake Headly is and was from time immemorial a natural body of water, fed and supplied by natural watercourses flowing into it upon its sides; that, like other streams, it had its stages of high and low water; that in its stage of ordinary high water it extended, by its natural flow, considerably beyond and to the northward of what is now the embankment of the gravel road; that, by reason of its such extension northeastward, its waters, before the erection of the embankment, rapidly subsided, and thereby the plaintiff's lands were saved from injurious inundation, then, upon such facts (if so found), it was the right of the plaintiff as against the defendant (whatever may have been the rights of others), to have the waters of said lake continue to flow in their natural course, and the builders of the gravel road, whether the defendant or a former company, had no right to obstruct the said flow, to the plaintiff's damage, without first having obtained from him the right to do so."

The court also gave the jury the following instruction:

"If you find from the evidence that the so-called Lake Headly, at and before the time of the building of the embank-

ment complained of, was a natural body of water, about a mile long by a quarter of a mile or so wide, commencing with a point or apex at its west end adjacent to the northwest corner of the plaintiff's land, and extending first in an easterly and then in a northeasterly course, and terminating north of the embankment in question; that it was supplied and fed by several streams putting into it from its north and south sides; that its waters were rapidly changed and drawn off by percolation; that the percolation or passage of the waters at its northeast end, through an extensive field of sand and gravel, was so great as in times of fullness to reduce its waters with unusual rapidity; and if you find that the percolation of the waters at its northeast end was so great as to create a drawing or movement of the waters to that end, though imperceptibly to ordinary observation, then upon such a state of facts, if so found to have existed, the said lake was within the meaning of the law a watercourse. A watercourse usually empties or debouches into some other stream or body of water, but not necessarily so. It may sink into a cavity or be taken down by rapid percolation."

The court also gave the jury the following instruction:

"If Lake Headly was a natural body of water lying in a natural basin, extending over the lands of others, but not extending over the land of the plaintiff, being constantly fed and supplied by living streams, the owners of the lands upon which it was might (so far as any question here appears) have drained or abated the lake, if they could have done so without injury to others, but they could not get clear of it upon their own lands, by diverting it upon the lands adjacent of others, and what they could not do the defendant could not do. If they could not abate it without injury to others, then the law requires them to endure what the arrangements of nature have made remediless."

The court, at the request of the defendant, gave the jury the following instruction, after reciting the allegations of the complaint:

" This complaint is for obstructing the flow of a running stream of water ; to constitute such a running stream or watercourse for the obstruction of which an action will lie, there must be a stream usually flowing in a particular direction, though it need not flow continually ; it may sometimes be dry ; it must flow in a definite channel, having a bed, sides or banks, and must usually discharge itself into some other stream or body of water ; it must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary cause ; it does not include the water flowing in hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from higher to lower land, but which at other times are destitute of water, such hollows or ravines are not, in legal contemplation, ' watercourses,' for the obstruction of which an action will lie, and if you believe from the evidence in this cause that the only overflow of the waters of Lake Headly in a northeasterly direction was occasioned by extraordinary freshets, causing the water to flow over the high ground at the northeast end of the lake, then that was not a watercourse within the meaning of the law, and then it would be your duty to find for the defendant."

These instructions were appropriate to the evidence, and fairly pointed out the distinction between a permanent watercourse and mere surface water.

There was evidence tending to show that the northern part of the bottom of Lake Headly was a bed of porous gravel and sand extending beyond the site of the present embankment, at ordinary high water, and that through this bed the water passed down with such rapidity as to create a continual current from the southwest to the northeast, and that this was always so until the making of the embankment prevented the waters from flowing in their accustomed course, and threw them back upon the plaintiff's land. The evidence showed that the lake was fed by living streams, and whether the water passed away by an outlet on the surface of the ground, or fell

into a cavern at the north end, or went downward more slowly through a bed of gravel at the north end, such passage would still be the natural channel of the current, which the defendant would have no right to obstruct.

As already stated, the appellant has pointed out no specific defect in any of the instructions; the general objection seems to be that here was a case of mere surface water, and, therefore, the instructions given and refused were wrongly given or refused. Under such a general presentation, we are not required to repeat here the remaining instructions. We think there was no error in giving or refusing the instructions; and we think there was evidence fairly tending to sustain the verdict of the jury. We find no error in the record. The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellant.

## ON PETITION FOR A REHEARING.

BICKNELL, C. C.—The petition states that Lake Headly "is in no sense a running stream, and is without known channel or course on the land on which the appellant's road is built," and that "it is a collection of water supplied by surface water and the overflow of Indian creek." But the question as to Lake Headly was fairly submitted to the jury.

The difference between a permanent watercourse and mere surface water was distinctly pointed out by the court below, in its instructions copied in the principal opinion, and the jury were plainly told that they should not return a verdict for the plaintiff unless they should find from the evidence that the so-called Lake Headly was not mere surface water, but was, and had been from time immemorial, a permanent watercourse such as the court in its instructions described.

There was evidence tending to show that Lake Headly was a permanent watercourse, fed by several streams, with a natural channel, which its waters, when high, always took, and

by which they passed away, so that the appellee was able to raise crops on his land for twenty-five years in succession, and that the waters of the lake were not mere surface waters, nor overflow, and that such natural channel was so obstructed by the appellant's road, built across it, that the waters of the lake, instead of flowing in their accustomed course, were thrown back upon the appellee's land to his damage.

A verdict can not be set aside where there is evidence tending to support it, merely because there is a conflict in the testimony.   Carmichael v. Cox, 85 Ind. 151.

The petition for a rehearing ought to be overruled.

PER CURIAM.—The petition for a rehearing is overruled.