Mitchell *v.* Bain *et al.*

Filed November 25, 1895.

No. 17,293.

Mitchell *v.* Bain et al.

Pleading.—*Complaint.*—*Easement by Prescription.*—*Private Way.*— *Title.*—A complaint alleging that plaintiffs are the owners of certain land; and that the only means of access thereto is over a specified road; and that the same has been used by plaintiffs and the grantors for fifty years continuously; and that during all such time such road has been and still is an easement and right of way connected with plaintiffs' land, sufficiently alleges their title to such road to withstand demurrer.

Same.—*Complaint.*—*Easement.*—*Adverse User.*—An allegation that plaintiffs and their grantors have for fifty years continuously used a private road under a claim of right, as a means of access to their land, with defendant's knowledge and acquiescence, and without objection on his part, sufficiently alleges that such use was adverse.

Special Finding.—*Private Way.*—*User.*—*Presumption.*—*Title by Prescription.*—Failure to find whether the use for fifty years of a private road by plaintiffs and their grantors was permissive is equivalent to a finding that it was not permissive, under the statute providing that an unexplained use of an easement for twenty years will be presumed to be under a claim of right, or adverse and sufficient to establish title by prescription.

WATER-COURSE.—*Defined.—Diverting.*—Water which has a definite source in a spring, and takes a definite course, is a water-course, which cannot be lawfully diverted from its natural channel so as to injure another's land, although at a certain point it spreads over marshy ground without a defined channel, where it again flows in such a channel. (See note at end of opinion.)

SURFACE WATER.—*Embankment.—Collecting and Discharging in a Volume on Private Way.*—A land-owner cannot, by an embankment, collect surface water on his own land and send it out in a volume on the private road of another to his injury.

From the Morgan Circuit Court.

*C. G. Renner* and *J. V. Mitchell*, for appellant.

*W. R. Harrison, J. H. Jordan* and *O. Matthews*, for appellees.

MONKS, J.—This was an action brought by appellees to enjoin appellant from erecting and maintaining an embankment on his own land, by means of which the water was collected and caused to flow and run in large quantities into a private road of appellees, their only means of ingress and egress to and from their farm of two hundred acres, thereby rendering the same unsafe for use, and to recover damages.

A demurrer to the complaint for want of facts was overruled, answer filed, and at request of appellant the court made a special finding of facts and stated its conclusions thereon. Appellant excepted to the conclusions of law; and, over a motion by him for a judgment on the special findings, the court rendered judgment in favor of appellees.

The only errors urged are : 1. The court erred in overruling the demurrer to the complaint. 2. The court erred in its conclusions of law.

Appellant insists that the appellees claim title to the private way in controversy, by prescription; and that the allegations in the complaint are not sufficient to sustain such title, for which reason the complaint is not good.

It is alleged in the complaint, ''that appellees are the owners of certain real estate; and that the only means of ingress and egress to and from said farm is over the road in controversy, to a public highway; and that the same has been used by appellees and those under whom they claim for fifty years to the present time, continuously; and that said road has been during all of said times, and still is an easement and right of way belonging to and connected with the aforesaid described land of these plaintiffs.'' This is a sufficient allegation, as to appellees' title to said road in controversy, to withstand a demurrer. Under this allegation, title to such easement may be shown by grant or prescription. *Steel* v. *Grigsby*, 79 Ind. 184 ; *Sanxay* v. *Hunger*, 42 Ind. 44.

The specific allegations, we think, are also sufficient to show title by prescription. Archbold N. P. (Finlay Ed.) Star, p. 457 ; 2 Chitty Pleading, 807–810 ; 3 Chitty Pleading, 1118, 1119 ; 2 Wms. Saunders, 113a, 128d, 114c, 114e. It is alleged ''that appellees and their grantors have, for fifty years continuously, to the commencement of the action, used said road as a means of ingress to and egress from their real estate, with the knowledge and acquiescence of appellant and his grantors; and that said easement and right has been enjoyed by the appellees and their grantors for the period aforesaid without obstruction, hindrance or interruption under a claim of right so to do.''

It is not essential that the word ''adverse'' be used. The rule is thus stated : In order that the enjoyment of an easement in another's land may be conclusive of the right, it must be adverse; that is, under a claim of title, with the knowledge and acquiescence of the owner of the land, and uninterrupted. 2 Greenl. Ev., (15th ed.), section 539, and notes ; *Sargent* v. *Ballard*, 9 Pickering, 251 ; 2 Wms. Saunders, 175d, note 2.

An allegation that the possession was under a claim of right, with the knowledge and acquiescence of the owner, is equivalent to an allegation that it was adverse. It is clear that the demurrer to the complaint was properly overruled.

It is also insisted by appellant that the special finding only shows that the appellees, and those under whom they claim, " enjoyed a permissive user of said lane or passway for sixty years or more, under a claim of right; but it is not shown that said claim of right was exclusive or adverse to appellant," and that this is fatal to appellees' case.    There is nothing in the finding to show that the use of said road was permissive.    The law is, that if there has been the use of an easement for twenty years unexplained, it will be presumed to be under a claim of right and adverse and be sufficient to establish the title by prescription and authorize the presumption of a grant, unless contradicted or explained.    Washburn Easements, (4th ed.), section 31, p. 156.

If the use be unexplained, it will be presumed to be adverse.  *School District* v. *Lynch*, 33 Conn. 330 ; *Hammond* v. *Zehner*, 23 Barb. 473, 21 N. Y. 118 ; *Biddle* v. *Ash*, 2 Ash. (Pa.) 211.

Where one uses an easement whenever he sees proper, without asking permission and without objection, it is adverse, and an uninterrupted adverse enjoyment for twenty years is a title which cannot afterwards be disputed.    Such enjoyment without explanation how it begun is presumed to have been in pursuance of a grant. The owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or special contract, inconsistent with a claim of right by the other party.    *Nowlin* v. *Whipple*, 120 Ind. 596 (6 L. R. A. 159), and cases cited on p. 598 ; *Dyer* v. *Eldridge*, 136 Ind. 654 ; *Pierce* v. *Cloud*, 42 Pa.

St. 102 (113–114) ; *Garrett* v. *Jackson,* 20 Pa. St. 335 ; *Hammond* v. *Zehner, supra; Sargent* v. *Ballard, supra* ; *Blanchard* v. *Moulton,* 63 Me. 434 ; *Mc-Arthur* v. *Carrie's Admr.,* 32 Ala. 75, 70 Am. Dec. 529 ; *Chalk* v. *McAlily,* 11 Rich. (S. C.) 153 ; *Blake* v. *Everett,* 83 Mass. 250 ; *Barnes* v. *Haynes,* 13 Gray 188 ; *Stearns* v. *Janes,* 94 Mass. 582 ; Washburn Easements, (4th ed.) pp. 156, 157 and 158, and notes.

It follows that the special findings, being silent as to whether the use of said road by appellees and their grantors was permissive, has the force of a finding for appellees as to that question; that is, that said use was not permissive. In this case, therefore, the uninterrupted use of the road in question by appellees and those under whom they claim for over fifty years, the same being their only means of ingress and egress to and from said farm, and it having been fenced on each side and worked and kept in repair by appellees, and those under whom they claim for over thirty years, without any finding that it was used by permission of appellant and those under whom he claims, or otherwise than under a claim or assertion of right, authorizes the presumption of a grant of the road as a private way to appellees and as appurtenant to their real estate. This is so for the reason that such use for twenty or more years, unexplained, will be presumed to be under an assertion or claim of right, and, therefore, adverse and not by lease or favor of the owner.

Appellant earnestly contends that appellees are claiming damages for the obstruction of a natural watercourse, and that the special findings disclose that the water alleged to have been obstructed by the embankment built by appellant was surface water, for which the law furnished no remedy, "as the same is regarded as a common enemy, which any land-owner may ward

off by erecting barriers against," citing *Weis* v. *City of Madison*, 75 Ind. 241 (249).

That part of the special finding necessary to present this question is as follows: "The private road from appellees' land is sixteen feet wide, and runs from the northeast corner of said land along the west line of appellant's real estate one-half mile, where it crosses the I. & V. R. R. track and intersects with a public highway. From the point where said private road intersects the public highway said highway runs north one-half mile upon or near the line dividing the lands of appellant and the heirs of Wilson Williamson, which last mentioned lands lie northwest of the intersection of said private road with said highway and railroad, and north of the railroad and west of said highway.

"Immediately west of said highway, as it passes between the lands of appellant and said heirs, the lands of said heirs are low and marshy, but incline to the west; that to the west of the marshy point of said lands of said heirs, and upon their lands, and about six or seven hundred feet west of and parallel with said highway there is a range of hills running in a south and and southwesterly direction, which hills are more than one hundred feet above the common level, and a part being quite abrupt and steep. That at the height of twenty-five to thirty-five feet above the level point of the intersection of said private way with said highway, along the foot of said hills, and on said Williamson's land, are four or five springs from five to seven hundred feet west of said highway, which springs flow constantly in wet and dry weather, and furnish water sufficient in volume to fill a pipe from four to six inches in diameter, and have so flowed from time immemorial. That the hills slope from these springs for a distance of forty feet to the east and southeast to said marshy grounds on

said Williamson's land. That prior to the time Williamson owned the land, viz.: in 1884, the water from the springs flowed east and south toward the highway, and had no defined channel except near the springs; the waters when they reached the marshy grounds spreading out and reaching and flowing south in the ditch along the highway. In constructing said highway north from the turn of said point of intersection aforesaid, said highway was thrown up, making solid grade east of said marshy lands of said heirs, forming a ditch on the west side of said grade running south to a point near the turn in said highway west. The lands of said heirs have been, both the hilly and marshy points, in cultivation for more than ten years, and the owners thereof have endeavored, by plowing and ditching, to prevent the flow of the water in natural channels over their grounds, and have united the flow of water from two of the principal springs, in an artificial channel or ditch, which conveys the same to a point near the intersection aforesaid. Williamson has made ditches in cultivating his land for the flow of water east to the highway and kept them cleaned out. In times of heavy rains and melting of snows the waters from said springs and hills are increased and gather in considerable volume on the lands of said heirs, and have always, from time immemorial, flowed in a southwesterly course across and near where the said highway and said railroad intersect with said private road, and on and into the lands of appellant, and have flowed over and down upon said lands from time immemorial, through a trough or depression in the ground, which is of considerable width, ranging at different places from two hundred to three hundred feet, and varies in depth from one and one-half to three feet. That said trough or depression over appellant's land has been the natural

course and trend of said waters from said springs, and also from said hills in times of heavy rains and melting of snows for more than sixty years, and the said water has run down the same for said period and over until diverted by appellant.

"That said waters, when high, so run and flowed down over the land of appellant into bayous and low places on the lands of appellant and others until the same were filled up, and then turned in a westerly direction running into the lands of others and thence into White river. That the course of the water over appellant's land, as aforesaid, is the only outlet that said waters have had from time immemorial.

"Appellant and his grantors, for a long time before this suit was commenced, cultivated the land in which said depression and channel is; said depression being cultivated with the rest of the land. Said water formed a pond and ponds upon the land of appellant, and when the flow of this water was increased in times of rains and melting snows from said hills, said pond and ponds would overflow and the water run down along said trough or depression, in the direction of said river, into said bayous. Appellant acquired title to said lands by will from his father, one James M. Mitchell, who died in 1885. Prior to the death of said James M. Mitchell, when he was the owner of said lands, the water from said springs ran onto said lands and kept said ponds replenished with water, and the same was used by said Mitchell for watering his hogs and cattle. That said springs flow at all times, but in very dry periods in the summer so much of the water becomes absorbed in the ground that the flow of the water at times reaches only to said highway. The water from said springs, after a long drought, does not flow onto appellant's said land to any extent, but in times during rains, and when the

ground is full of water, the flow of water therefrom
onto appellant's land into said trough is considerable,
and the volume of said waters in times of heavy rains
and melting snows is greatly increased and flows in a
large body down said course on appellant's land.   That
for twenty-five years and over a culvert has been kept
and maintained by the road supervisor at said public
highway a short distance west of the said turn at the
railroad, for the passage of said water under said high-
way onto the lands of appellant.   That in building the
railroad, over twenty-five years ago, a waterway was
provided by the company constructing the same for the
passage of said water under said railroad bed at the
corner of appellant's land, through which said water
flows and has flowed onto appellant's land and thence
down said course thereon.   That the road-bed of appel-
lees' road at a point south of where said water enters
and flows upon said appellant's land, is near three feet
higher than the appellant's land at the point where said
water enters thereon, and that said water flowing and
rising as aforesaid, at no time prior to the erection of the
levee by the appellant hereinafter mentioned run down
said road or in any way affected the same.   That on
April 1, 1891, appellant constructed and built on his
own land across the course where said water flowed as
aforesaid a solid levee and embankment three and one-
half feet high, for the express purpose of diverting and
obstructing the flow of said water.   Said levee was
erected by appellant upon said lands south of the north
boundary line of said lands where the same abut upon
the said road and highway, a distance of forty-four
feet from said boundary line and about forty-four
feet from the east line of appellees' road.   That
said levee and embankment, as the same was intended
by appellant, did prevent and obstruct the flow of said

Mitchell *v.* Bain *et al.*

waters from their natural course and collect the same together in large quantities within the confines of said levee upon said land, and then and thereby; by reason of said embankment, the same was forced to flow back and across said highway to about the depth of two feet in times of high water and then to flow over and down upon appellees' road and passway."

It is shown by the special findings that the water from the springs has flowed in an easterly direction towards the highway in a channel or channels to the wet, marshy grounds, where it has spread out and finally reached the highway and flowed down the west side thereof and under the culvert mentioned, then through the waterway under the railroad into appellant's land at the northwest corner of that part which lies south of the railroad ; that the water from said springs has so flowed onto the land of appellant from time immemorial; that when the weather was very dry in the summer the water was absorbed before it reached appellant's land, but that at all other times it flowed into his lands in the same channel and into a pond or ponds; that while Williamson owned the land on which the springs were situated he diverted the water from its natural channel by making artificial channels and ditches through which the water flowed east to the highway; that the water flowed from the springs in a definite channel onto appellant's land in such quantities that it fed ponds thereon, and the same was used by appellant's grantor to water hogs and cattle; that the face of the country was such, on account of the range of hills, that it necessarily collected in one body a large quantity of water after heavy rains and melting of snow, which required an outlet and that the same flowed down the channel and course in which the water from said springs flowed, and the same had so escaped into White river for time immemorial.

There can be no doubt that if anyone had diverted the water from said springs so as to prevent it flowing through the usual channel onto appellant's land, such person would be liable to appellant in damages. *Gillett* v. *Johnson*, 30 Conn. 392.

It is true, as claimed by appellant, that a water-course is a stream of water having a bed, sides and banks, and the water need not flow continually; the channel may sometimes be dry. *Weis* v. *City of Madison*, *supra*. The size of the stream, however, is not material. Where water has a definite course, as a spring or springs, and takes a definite channel, it is a water-course, and no person through whose land it flows has any right to divert it from its natural channel so as to injure another land-owner. *Gillett* v. *Johnson, supra; Macomber* v. *Godfrey*, 108 Mass. 219, 11 Am. Rep. 349; *Luther* v. *Winnisimmet Co.*, 9 Cush. 171; *Pyle* v. *Richards*, 17 Neb. 182; *Arnold* v. *Foot*, 12 Wend. 330; *Smith* v. *Adams*, 6 Paige 435.

A spring becomes a water-course from the point where the water comes to the surface and begins to flow in a channel or bed with such banks or shores as confine the water and cause it to run in a certain direction. Gould Waters, section 41; *Case* v. *Hoffman*, 84 Wis. 438, 36 Am. St. Rep. 937.

A stream does not cease to be a water-course and become mere surface water because at a certain point it spreads over low ground several rods in width and flows for a distance without a defined channel or banks before flowing again in a definite channel. *Macomber* v. *Godfrey, supra*; *Case* v. *Hoffman, supra; Pyle* v. *Richards, supra*.

If a water-course is lost in a swamp or lake, it is still a water-course if it emerges therefrom in a well defined channel. *Hebron Gravel Road Co.* v. *Harvey*, 90 Ind.

192, 46 Am. Rep. 199 ; *Munkres* v. *Kansas City, etc., R. R. Co.*, 72 Mo. 514.

In *Gillett* v. *Johnson, supra*, there was a spring on defendant's land about sixteen rods from the dividing line between his and plaintiff's land, which supplied a small stream of water and ran to plaintiff's land, being suffi-. cient to fill a half-inch pipe. The supply was constant except in very dry weather. For six or eight rods the water descended rapidly in a well defined course between abrupt banks to a piece of marshy ground, where it spread out so that its flow during the summer months was slight—not sufficient to break the turf, but was generally sufficient to form a continuous sluggish current along the surface in a natural depression to a watering place on plaintiff's land. The defendant diverted the stream on his own land and thereby deprived plaintiff of its use. It was held to be a water-course and the defendant was liable.

In *Pyle* v. *Richards, supra*, the lands of the plaintiff and defendant were south of the Nehama river, and the A. & V. railway ran nearly on a line between their respective tracts of land ; that of the defendant, the plaintiff in error, was south and higher than the land of the plaintiff, the defendant in error. One or more ravines extended some distance above defendant's land, in which were certain springs, from which, during a portion of the year, flowed a small stream. In very dry weather it went dry, or partially so ; down at the road it sank into the ground ; in wet weather it ran all the time. The natural course of the water through plaintiff's land was northeast. Defendant built a dam across the course of the water and made a new channel for the same, running north, so that the water was discharged through a culvert on the land of plaintiff. A large amount of surface water from melting snow and heavy

rains also flowed through said channel. It was held to be a water-course, and the defendant was liable. The court also held that although surface water may accumulate in the channel of a stream, which is dry a part of each year, and greatly increase the flow of water at times, yet it will not defeat a recovery for injuries arising from a diversion of the stream, whereby its water was discharged over the land of another.

In *Macomber* v. *Godfrey, supra,* a stream of water flowed across a road into defendant's land, taking a northwesterly course across his land in a well defined channel, but when within five rods of plaintiff's land, the water spread out over the surface, covering a space of several rods in width, and thus ran upon and across plaintiff's land, which was a level meadow, and covered the same for a space of several rods in width, irrigated it in a valuable manner through its whole length, being about seven rods, and during the whole length on plaintiff's land had no defined channel, and not until a short distance beyond plaintiff's land, where it again formed a small brook, and ran off in a westerly direction. Defendant diverted the water on his own land and thereby prevented the same from flowing through the plaintiff's land. It was held to be a water-course, and that the defendant was liable. The court said : "If the whole stream had sunk into defendant's soil, and no water remained to pass to plaintiff's land, except under the surface, it would have ceased to be a water-course, and the plaintiff would have no right to it. * * * But where, owing to the level character of the land, it spreads out over a wide space without any apparent banks, yet usually flows in a continuous current and passes over the surface to the lands below, it still continues to be a water-course." Even surface water becomes a natural water-course at the point where it begins to form a reasonably

well defined channel with bed and banks, or sides and current, although the stream itself may be very small, and the water may not flow continuously. Gould Waters, section 263 ; *Churchill* v. *Lauer*, 84 Cal. 233 ; *Kelly* v. *Dunning*, 39 N. J. Eq. 482.

In *Taylor, Admr.,* v. *Fickas,* 64 Ind. 167, this court said : "The true doctrine in such cases, we believe, was expressed by the chancellor, in the case of *Earl* v. *De Hart*, 1 Beasley, 280. 'If the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains or melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is regularly discharged through a well defined channel, which the force of the water has made for itself, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural water-course.'" This statement of the law was again quoted with approval by this court in *Schlichter* v. *Phillippy*, 67 Ind. 201, and in *Hebron Gravel Road Co.* v. *Harvey*, 90 Ind. 192.

The rule is thus stated in Gould on Waters, section 264 : "In broken regions of country, intersected by long, deep ravines, or surrounded by high, steep hills or bluffs, down which large quantities of water from rain or melting snow rush rapidly, often attaining the volume of a small river, and usually following a well defined channel, the common law rules applicable to surface water do not necessarily apply. In many respects such waters partake more of the nature of natural streams than of ordinary surface water, and, to a certain extent, are governed by the same rules ; and no one has the right to divert such waters, so as to cast them upon the property of others, to their injury." *Kelly* v. *Dunning, supra; McClure* v. *Red Wing*, 28 Minn. 186 (193) ; *Ramsdale* v. *Foote*, 55 Wis. 557 (561).

It is clear, from the authorities cited, that the court did not err in stating the conclusions of law in favor of appellees, nor in rendering judgment on the special finding in their favor. If it were even admitted that the waters were mere surface waters, which the land-owner may fight off his land, if he could, yet if appellant, by said embankment, collected the same on his own land and poured it in a volume on appellees' private road, to their injury, as stated in the special finding, appellees would be entitled to enjoin the same and recover damages therefor. *Davis* v. *City of Crawfordsville,* 119 Ind. 1, and cases cited ; *Patoka Township* v. *Hopkins,* 131 Ind. 142 ; Gould Waters (2nd ed.), section 271.

There is no error in the record.

Judgment affirmed.

JORDAN, J., took no part in the decision of this cause.

Filed November 26, 1895.

NOTE.—When swales and ravines are regarded as water-courses, is the subject of a note to the Iowa case of *Wharton* v. *Stevens,* as reported in 15 L. R. A. 630.