### CITY OF JACKSONVILLE

*v.*

### EDWARD LAMBERT.

| 62  | 519  |
| 29a | 122  |
| 62  | 519  |
| 145 | 20   |
| 62  | 519  |
| 78a | 366  |
| 62  | 519  |
| 212 | 1412 |

1. MUNICIPAL CORPORATION—*liability for tort—nuisance.* Even though the authorities of a city may be under a legal duty to afford sufficient drainage for the health and comfort of the inhabitants, and, in the discharge of such duty, construct a sewer or drain after the most approved plan, using the best material, and the work is done in the most skillful manner, yet they have no right thereby to concentrate the dirty water, offal, and filth of the city or any portion thereof, and discharge the same upon the premises of an individual; and if, in so doing, a private injury is sustained, the city will be liable for the damages. It must so construct such improvement as to avoid injury to individual property.

2. SAME—*discharging filth on private property.* Where a city constructed a sewer so that the garbage, suds and slops, offal and filth from the dwelling-houses and woolen mills by which it run was conducted, discharged, and flowed upon and through the real estate of the plaintiff, situate in the city and near the *terminus* of the sewer, corrupting and polluting the atmosphere so as to render the land unsaleable and unsuitable for residences, and otherwise injure the use of the land or a portion thereof: *Held,* that the city was liable to the plaintiff in case for the damages sustained.

3. SAME—*condemnation.* If, in abating or removing a public nuisance by a system of sewerage or drainage, it unavoidably inflicts an injury to private property, the corporate authorities should, by condemnation or otherwise, make compensation for the injury.

4. DAMAGES—*exemplary.* Where a city, in constructing a sewer in good faith, of good material, and in a skillful manner, has caused an injury to private property by the flow of offal and filth from the terminus of the sewer upon and through such property, punitive damages are not authorized.

5. EXCESSIVE DAMAGES—*tort.* In this case the city had constructed a sewer terminating near a tract of about fifty acres of plaintiff's land, whereby the offal and filth of a portion of the city was discharged and flowed over part of the tract, cutting off about six acres; but the work, at the time of the trial, was so changed that it was no longer a nuisance, and it did not appear that plaintiff or his family had suffered any considerable annoyance; but the principal claim and proof of damage was based upon an assumption of an injury in being prevented from effecting sales of the lands for residences. The jury rendered a verdict for $1,900 damages: *Held,* under the circumstances, to be grossly excessive, and ground for a new trial.

APPEAL from the Circuit Court of Morgan County; the Hon. C. D. HODGES, Judge, presiding.

This was an action on the case by Lambert against the city of Jacksonville. The declaration set forth in substance that plaintiff was possessed and seized of certain tracts of land, containing fifty acres, in the limits of the city, of great value, and suitable for residences; that defendant, in the exercise of its corporate powers, constructed and built a sewer, giving its commencement, courses and terminus, so that large quantities of foul, nauseous, noxious, putrid, etc., substances, liquids, and matter flowed out of such sewer, and from thence into, upon, and over some of the aforesaid tracts, rendering the air unwholesome and offensive, etc., whereby the plaintiff had been greatly annoyed and disturbed in the enjoyment of said lands, and the sale thereof destroyed, and the value greatly depreciated.

The testimony showed that the terminus of the sewer was about three hundred feet from the nearest part of the plaintiff's land, and that the flowings from the sewer passed over and cut off about six acres of plaintiff's land. The plaintiff lived about half a mile from the flow. Plaintiff testified: "I estimate my damages principally on the ground that I couldn't sell my lands in part or in whole on account of the outflowing of the sewerage upon the premises." The other material facts appear in the opinion.

Mr. Oscar A. De Leuw and Mr. I. L. Morrison, for the appellant.

Mr. J. T. Springer and Mr. H. Stryker, Jr., for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

It is first insisted, that the city is not liable to appellee for damages he may have sustained by reason of constructing the sewer so as to discharge the drainage from the city upon the premises of appellee. And it is said that cities have been compelled to construct such improvements for the preservation of the health of their citizens and for the promotion of their

comfort. And it is urged that the work was skillfully and well done. This may all be conceded, and still it does not follow that liability would not attach. It may be true that a city is liable to be compelled to afford sufficient drainage for the health and comfort of the people, but that would not authorize them to so construct the work as to destroy or seriously impair the value of the property of an individual. No one would suppose that the city would have the right by drainage and sewerage to collect all of the dirty water, swill, putrid matter, and garbage of the city, or any portion thereof, and lead it to and discharge it in the door-yards of a portion of the inhabitants. That would be an invasion of private rights; that would be violation of every rule of law, and shock the sense of justice entertained by every fair-minded man.

Nor would it be in the slightest degree either a defense or excuse, to show that such a sewer or drain was constructed of the best material, and the work performed in the most skillful manner, and the plan on the most approved model. In performing such duties they are required to construct such improvements in such a manner as to avoid injury to individual property. They have no right to concentrate the offal and filth of a city, which is a nuisance to the public, and discharge it upon the premises of an individual. If a public nuisance, and there is no means of making proper drainage without injury to individuals, let the community for whose benefit it is constructed, through their corporate government, by condemnation or otherwise, make compensation. Every principle of justice and the dictates of reason would say that it is wholly wrong to impose the burden of the nuisance on one or a few citizens.

This precise question has not been before us, but in *Nevins* v. *The City of Peoria*, 41 Ill. 507, and *The City of Aurora* v. *Reed et al*, 57 Ill. 29, the same principle has been announced. In those cases it was held that the city had no right to so construct the drainage over the surface as to concentrate it on individual property; and if they should, they would be held liable for the damages thus inflicted. And

the rule must apply with more force when all of the filth of various kinds accumulated and produced in a particular portion of the city is confined to a large sewer and carried and discharged on private property, with its concentrated gases and offensive odors produced by putrefaction. The city had no right to impose such a burden upon one individual, and in doing so, if injury was sustained, it must be held liable to make compensation.

It is next urged that the damages are so excessive that the judgment should be reversed. We regard this objection as well taken. It is not pretended that the noisome smells and offensive odors produced at the place where this sewer discharged this fetid water and matter, annoyed appellee or his family to the extent of the damages recovered. There could not be the least semblance of reason to say that such annoyance caused injury to the amount of $1900. But it is said, that the damage was sustained by depreciation in the value of the property upon which the sewer discharged, and in the loss of profits that might have been realized on sales that could otherwise have been made. It appears that the work has been so changed that the sewer is no longer a nuisance to appellee's land. It is not, then, a continuing nuisance, and the question of damages is narrowed to the injury produced while it was continued.

Some of the witnesses, in estimating the damages, fixed the value of the land; estimated the interest upon the sum; fixed the rental value of the property; deducted the latter from the interest thus estimated, and took the remainder as the damages sustained; and the jury seem to have adopted some such theory, probably allowing a given time for the sale of the property in lots, and then estimated interest on the supposed purchase money from that time until the recovery was had. Such a mode of arriving at the damages is manifestly wrong. In the first place, the price for which the property would have sold is conjectural. That purchasers could have been found at any such prices is mere assumption, as far as this record discloses. And there is nothing to show that it, or any consider-

able portion of it, could have been sold at the supposed value or even at reduced rates. To assume all of these conjectures as facts, and that must be done to warrant such an assessment of damages, was to act upon very remote conjectures.

It appears that appellee might, perhaps, have sold a small portion of the land for one thousand dollars. But there is no satisfactory evidence that the remainder could have been sold, or if it could, the price that could have been received is not shown. To sanction such a basis for the assessment of damages would be to authorize mere conjecture to be substituted for reasonable certainty. In such cases, only the damages actually sustained is the measure for a recovery. And the evidence should, with reasonable certainty, indicate the amount. And, while courts are reluctant to disturb verdicts because the damages are excessive in cases where there is no precise standard for their measurement, still the verdict must be sustained by the evidence. A jury in such cases do not have an unbridled license to fix such a sum as may be suggested by caprice, prejudice, or passion. This class of cases is unlike those in which punitive damages are authorized. In cases of the latter class, juries have some discretion; but not so in cases of the character of this. In looking at the testimony in any light in which we have been able to view it, we are constrained to hold that the damages are grossly excessive, and so much so that the finding of the jury should not be permitted to stand.

For this reason the court below erred in overruling the motion for a new trial, and the judgment is reversed and the cause remanded.

*Judgment reversed.*