WILLIAM JOHNSTON, Defendant in Error, *vs.* THE CITY OF GALVA, Plaintiff in Error.

*Opinion filed April 24, 1925.*

1. NUISANCES—*land owner not required to erect fence to mitigate damages to his stock from pollution of stream.* A land owner who for many years has had unobstructed use of his pasture land and of the water in a creek running through it, undefiled by sewage, is not required to erect a fence to protect his stock from the pollution of the stream by the sewage from a subsequently constructed system of a city, and the cost of building and maintaining such fence is not the measure of his damages in a suit against the city.

2. SAME—*city cannot pollute stream with sewage to injury of land owner.* To corrupt or render unwholesome or impure the water of any stream to the injury or prejudice of others constitutes

a public nuisance under section 221 of the Criminal Code; and this is true even though the pollution of the stream is due to a system of sewage disposal which a city has established as an agency for the protection of the health of its inhabitants.

3. SAME—*injured party is not required to protect himself from nuisance.* The rule requiring the injured party to protect himself from the consequences of the wrongful act of another by the exercise of ordinary effort, care and expense does not apply in cases of nuisances.

4. NEGLIGENCE—*defendant cannot escape liability because damages are difficult of ascertainment.* Damages must be the proximate result of the wrong of which complaint is made, but the defendant cannot escape liability because the damages are difficult of ascertainment; and although witnesses are not permitted to speculate or conjecture as to possible or probable damages, still the best evidence which the nature of the subject will permit is receivable, even though it is no more than opinions of well-informed persons.

5. SAME—*what evidence of damages from nuisance is speculative.* In an action against a city for damages caused by the pollution of a stream which runs through the plaintiff's pasture, evidence of the value of some of the plaintiff's horses which died from lockjaw is not admissible, where there is no evidence that the polluted stream was the cause of the lockjaw and where the evidence concerning the source of the tetanus germs which infected the horses is purely speculative and conjectural.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. CHARLES J. SEARLE, Judge, presiding.

CLARK ABY, and HAL M. STONE, for plaintiff in error.

STURTZ & EWAN, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court: ·

William Johnston instituted suit in the circuit court of Henry county against the city of Galva to recover damages caused by the pollution of a natural water-course which ran across his farm. A jury trial resulted in a verdict for

the plaintiff for $4000. The court required a *remittitur* of $1500 and judgment was rendered for $2500. Upon appeal to the Appellate Court for the Second District the judgment of the circuit court was affirmed. The record is here by writ of *certiorari* granted upon the petition of the city.

For many years William Johnston owned 112 acres of farm land, of which the north 32 acres were situated within the limits and upon the southern boundary of the city of Galva. The remaining 80 acres constituted a rectangular tract, one-quarter of a mile in width from east to west, adjoining the north 32 acres and extending south for one-half of a mile. Johnston and his family resided on the north 32 acres. The south 55 acres of the farm consisted of pasture land, on which his livestock grazed. Across this pasture, from a point on the east line of the farm about one-eighth of a mile north of its southern boundary, a creek ran in a northwesterly direction. About the year 1912 the city of Galva, a municipal corporation with a population of approximately thirty-five hundred, constructed a sewer system. A part of this system conveyed the sewage from the business houses and dwellings of about five hundred people in the south and east portions of the city to a settling tank and filtering beds located south of the corporate limits. After subjection to whatever purification process the tank and beds afforded, the sewage passed through an open ditch, then through certain tile drains and a concrete abutment, and finally into the creek at the east line of Johnston's farm. Water which was collected from an area of approximately 1100 acres to the northeast, east and southeast of Johnston's land flowed through the creek prior to the construction of the sewer system. The extent of that flow was disputed. On behalf of Johnston, the defendant in error, it appeared that it was practically continuous throughout the year, while the city of Galva, the plaintiff in error, offered testimony that the creek was often dry. The defendant in error did not, however, rely upon the creek to supply water for his

livestock, because he obtained water for that purpose from a well near his residence. The evidence concerning the quantity and character of the sewage which was emptied into the creek was also in conflict. From the testimony offered by the defendant in error it appeared that not all of the filtering beds were utilized and that sewage left the disposal tank after partial purification; that at times it became so thick that it would hardly flow; that sludge was deposited on the bottom of the creek, though decreasing in quantity as the creek pursued its course westward; that the sewage was of a dirty milky color and had an odor which was more offensive in warm, dry weather than it was after freshets occurred or when it was cold, and that the odor was noticeable for a considerable distance from the stream. Witnesses who had made a study of sanitation and disease-producing conditions and had inspected the creek testified that germs causing typhoid and scarlet fever and diphtheria were carried in the sewage, and that these germs might infect the milk if the cows were permitted to wade in the creek. Certain witnesses testified that there was no odor from the creek, while others stated that there was an odor which was perceptible for only a short distance. Witnesses for the plaintiff in error admitted that the creek was polluted to some extent and that plans for a new sewage treatment plant were under consideration by the city.

The defendant in error claimed damages for the five-year period beginning in October, 1917. During that time he owned approximately twelve cattle, fifteen horses and one hundred hogs, and he milked five to seven cows. His claim included, among others, the following items: (1) The cost of hay and grain fed to his milch cows from May to October of each year while they were confined to the barn lot to prevent their coming into contact with the sewage instead of grazing in the pasture, as they did before the sewer emptied into the creek, approximately $450 annually; (2) the loss of milk which resulted from keeping the cows

out of the pasture, thirty to thirty-five quarts a day, at ten
cents per quart, the market price, or $450 each year; (3)
the cost of labor, $125, and the value of his own time, $375,
each year for driving the horses to and from water because
they refused to drink out of the creek, aggregating $500
annually; and (4) the value of three horses which died of
lockjaw in the year 1919, $750. Evidence in support of
these items was admitted.

The plaintiff in error insists that it was the duty of the
defendant in error to mitigate the damages, if any, by build-
ing a fence on both sides of the creek, and that in any event
the cost of such a fence would be the full measure of his
damages. It appeared that it would cost $160 to build the
fence and that its maintenance would require the expendi-
ture of $10 annually. Prior to the construction of the
sewer system by the city and the deposit of its sewage in
the creek there was no necessity for such a fence. The de-
fendant in error had enjoyed the unobstructed use of his
pasture land and the flow of water in the creek in its nat-
ural state, undefiled by sewage. The construction of the
sewer system by the plaintiff in error did not divest him of
these rights. He could not be deprived of them except by
due process of law. (*Tetherington* v. *Donk Bros. Coal Co.*
232 Ill. 522; 20 R. C. L. 402.) This is true even though
a system of sewage disposal is an agency for the protec-
tion of the health of a city's inhabitants. To corrupt or
render unwholesome or impure the water of any stream to
the injury or prejudice of others constitutes a public nui-
sance by section 221 of the Criminal Code. (Smith's Stat.
1923, p. 708.) A municipality has no greater right to com-
mit a nuisance than has an individual. (*City of Kewanee*
v. *Otley,* 204 Ill. 402; *City of Aurora* v. *Reed,* 57 id. 29;
*City of Jacksonville* v. *Doan,* 145 id. 23; *Nevins* v. *City
of Peoria,* 41 id. 502; 1 Farnham on Waters and Water
Rights, sec. 138*b*; 4 Dillon on Mun. Corp.—5th ed.—sec.
1740.) The rule requiring the injured party to protect him-

self from the consequences of the wrongful act of another by the exercise of ordinary effort, care and expense on his part does not apply in cases of nuisances. (*City of Jacksonville* v. *Doan, supra; City of Jacksonville* v. *Lambert,* 62 Ill. 519; *City of Aurora* v. *Reed, supra; American Smelting and Refining Co.* v. *Riverside Dairy and Stock Farm,* 236 Fed. 510; *Price* v. *High Shoals Manf. Co.* 132 Ga. 246; 8 R. C. L. 445; 17 id. 717; 2 Wood on Nuisances,—3d ed.—sec. 844; 1 id. sec. 435; *Paddock* v. *Somes,* 102 Mo. 226; *Niagara Oil Co.* v. *Ogle,* 177 Ind. 292; *Holsman* v. *Boiling Spring Bleaching Co.* 14 N. J. Eq. 335.) No duty rested upon the defendant in error to enclose the creek by a fence, and the cost of building and maintaining such a fence is not the measure of his damages.

It is further contended by the plaintiff in error that the items for (1) the cost of hay and grain fed to the cows of the defendant in error while confined to the barn lot because of the pollution of the waters of the creek, (2) the alleged resulting loss of milk, and (3) the cost of labor and the value of the defendant in error's time in driving his horses to and from water, were purely speculative and conjectural and for that reason are not proper elements of damage. If by reason of the wrongful acts of which the defendant in error complained he sustained these items of damage they were proper elements to be submitted to the jury. Damages must, however, be the proximate result of the wrong of which complaint is made. Where the right of recovery exists the defendant cannot escape liability because the damages are difficult of exact ascertainment. The nature of the inquiry in the instant case is such that it is difficult, if not impossible, to ascertain with mathematical certainty the amount of the defendant in error's damages, but this difficulty affords no answer to a cause of action which results from a breach of duty imposed by law. The unliquidated damages growing out of the commission of a tort are seldom susceptible of exact measurement. The rule

is, that while the law will not permit witnesses to speculate or conjecture as to possible or probable damages, still the best evidence which the subject will admit is receivable, and this evidence is often nothing better than the opinions of persons well informed upon the subject under investigation. (*Daughetee* v. *Ohio Oil Co.* 263 Ill. 518.) Some of the evidence adduced by the defendant in error to establish the items claimed was merely speculative and conjectural and should not have been admitted. There was, however, sufficient competent evidence concerning these items to warrant the submission of the cause to the jury.

The plaintiff in error also contends that evidence of the value of the three horses should not have been admitted, because it was not shown that the sewage in the creek caused the lockjaw from which they died. Dr. H. N. Heflin, a physician, testified that if there were open sores on horses or cattle the wounds might become infected and result in lockjaw. Frank Luper, a veterinarian, who attended one of the horses, testified that he did not find any abrasions on the animal, and that tetanus germs were most commonly found in garden and barnyard soils. Other witnesses testified that tetanus germs were prevalent in barnyard manure, barren lots and on barbed wire fences. No testimony was offered that there were any open sores or abrasions on any of the three horses owned by the defendant in error. 'There was no testimony that the horses were more likely to contract lockjaw from tetanus germs in the creek than from those germs in other places on the farm. A review of the testimony fails to establish that the polluted stream was the cause of the lockjaw. So far as the record shows, the horses might have become infected elsewhere. The evidence concerning the source of the tetanus germs which infected the horses was purely speculative and conjectural. Where resort must be taken to speculation or conjecture for the purpose of determining whether the damage results from the

wrongful act of which complaint is made or from some other cause, damages cannot be allowed. (*Indianapolis, Bloomington and Western Railway Co.* v. *Birney*, 71 Ill. 391; *Daughetee* v. *Ohio Oil Co. supra.*) The evidence with reference to the value of the three horses should have been excluded. Its admission constitutes reversible error.

The judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*