(No. 4894

GEORGE W. MAIN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 29, 1965.*

PREE AND PREE AND JOE CRAIN, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; LAWRENCE W. REISCH, JR., Assistant Attorney General, for Respondent.

DOVE, J.

This claim was brought by George W. Main, a farmer of Johnson County, Illinois, for flooding damages to his farm land alleged to have been caused by certain constructions approved and made by the Division of Highways, Department of Public Works and Buildings of the State of Illinois.

Claimant owns a 1,500 acre farm on the north side of the Cache River in Johnson County. The farm is divided

by Illinois State Bond Issue Route No. 147. During the early part of 1956, claimant entered into an agreement with the Department of Public Works and Buildings to lease a strip of ground twenty feet wide along the west side of Route No. 147. The Cache River bisected the leased property at midpoint.

By virtue of this agreement, the Division of Highways entered upon the land to construct a temporary detour bridge, while the original bridge on Route No. 147 was being replaced. From the testimony, it appears that the initial construction began on January 3, 1957. The testimony indicates that, after the clearing process and the construction of the detour bridge, two earthen dams were constructed across the Cache River on either side of the construction area. The purpose of the dams was to provide the workmen with a dry working area by pumping out the water between the two dams. It appears that the earthen dams were built in the Spring of 1957. At a later date the earthen dams were replaced by wooden coffer dams, which remained until November, 1959.

When the claimant noticed the construction of the dams, he complained that they would obstruct the drainage system of the area. But, his objections to the resident engineer, State Highway Department employees in Carbondale, and in Springfield to the Department of Public Works and Buildings, were to no avail.

During October, 1957, claimant's farm land was partially flooded. In the Spring of 1958, the area was again flooded, and, after the crops were replanted, flooding occurred again in October, 1958, which destroyed the crops for the third time.

Claimant contends that the damming up of the Cache River caused depreciation of the value of the farm land, as well as crop damages.

Testimony was offered, which showed that, although the area has drainage problems, and through the years there has been occasional spotted flood damage, the farm had not experienced flooding of this nature during a crop season since 1928.

However, evidence was also introduced, which established that this particular drainage area experienced abnormally high rainfall during the crop seasons of 1957 and 1958. Such high rainfall had not been encountered since the 1928 crop season. It is difficult, however, to compare the drainage system of 1928 with that of 1957 and 1958, since, during the interim, the area had undergone many changes. These include new drainage ditches, and culverts laid by the State, the railroad, and private individuals, as well as levies and cut-offs between the rivers and streams. The consideration of the case must also include the fact that the coffer dams were not removed until November, 1959, and that no flooding occurred during the crop season of 1959.

The difficulty, of course, lies in establishing the causation of the flooding. Claimant alleges that it was caused by the dams constructed across the river. Respondent has answered that the cause was not the dams, but rather the heavy rainfall. Both parties have introduced into evidence a myriad of exhibits and data to establish their respective positions. We believe that the weight of the evidence establishes that the construction of the dams was the primary cause of the flooding.

The determination of the amount recoverable by the claimant is more difficult. Although it is a well established maxim of law that damages, to be recoverable, must be actual, and not speculative or uncertain, a distinction has been drawn between uncertainty as to cause and uncertainty as to amount. *Philadelphia and Reading Coal and Iron Co.*

vs. *Calumet Shipyard and Dry Dock Co.*, 339 Ill. App. 142, 88 N.E. 2d 891 (1949).

In the present case, claimant has exercised great diligence to prove his loss. However, by the very nature of the facts, absolute certainty is impossible. In such cases, it has been held that difficulty in ascertaining the amount of damages is not fatal to claimant, once the causation has been established. *Johnston* vs. *City of Galva*, 316 Ill. 598, 147 N.E. 453 (1925).

The evidence shows that approximately 140 of the cultivated acreage was flooded in 1957 and 1958. It was also shown that in past years there has been crop damage to a portion of this 140 acres during periods of high rainfall. This lower area consists of approximately 20 acres. The weight of the evidence shows that the cause of the remaining damage can be attributed to the construction of the dams. We are of the opinion that the State of Illinois is liable for 120 acres of crop loss in both years, 1957 and 1958. This is a total crop loss of 240 acres for the two years.

Claimant testified that corn and soy beans were alternately planted on the farm. His testimony shows that the average yield would amount to $80.00 per acre, less the cost of planting and harvesting in the sum of $4,800.00, for a total amount of $14,400.00. To this must be added the cost of replanting during 1958 in the amount of $3,600.00.

Claimant also alleges that the fair market value of the farm was depreciated by the flooding. However, it was shown that no permanent damage resulted to the farm land, and we are of the opinion that claimant's allegations are without merit.

An award is, therefore, entered in favor of claimant, George W. Main, in the sum of $18,000.00.