(No. 6185—

EDWARD R. HEIL, ET AL., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 15, 1976.*

DRACH, TERREL and DEFENBAUGH, Attorneys for Claimants.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

This claim, founded upon a contract, invokes the Court's jurisdiction pursuant to the Court of Claims Act §8(b). The claim is for payment of money allegedly due

the Claimant for the performance of work done for the State under a certain contract designated as contract No. FR-198, referred to as the Addison Creek Channel Clean-out Contract. The contract generally provided for the channel clean-out of a certain portion of Addison Creek between St. Charles Road on the south and North Avenue on the north. This area lies to the west edge of Cook County, close to the Dupage County line.

In addition to the clean-out of Addison Creek, the contract provided for the removal of certain trees and the mulching, seeding and fertilizing of the banks in certain areas within the limits of the contract. The contract was awarded on June 29, 1970, through the then Department of Public Works and Buildings, Division of Waterways.

All work required under the contract has been completed by the Claimant and accepted by the State.

A dispute exists as to the amount of units of work actually performed for which the Claimant is entitled to be compensated at the unit prices stated in the contract. Units of excavation work are stated in cubic yards. Units of work for seeding and mulching are in acres. Claimant alleges that they excavated 15,842 cubic yards; that they were only paid for 9,304 cubic yards; and that the Respondent should pay for another 6,548 cubic yards at $4.45 per cubic yard, totaling $29,139.60.

A dispute also exists as to the amount to which the Claimant may be entitled for damages allegedly incurred by him in the completion of work by reason of the failure on the part of the Respondent to provide right-of-way for use of the Claimant in connection with the work to be performed, as shown on the contract documents. The complaint claims $20,000.00 as the sum to which the Claimant is entitled for the State's lack of right-of-way.

There is also a disputed claim in the amount of $21,934.05 for damages allegedly due to flooded conditions of the channels at the time they were to be excavated. We find that part of the claim to be totally unsupported, and that nowhere in the contract is there to be found any reference to the condition of the channels.

Including the alleged flood damages, the complaint alleges that the entire amount to which the Claimant was entitled was $126,056.05; that Claimant was paid the sum of $53,234.80; and that the unpaid amount due the Claimant was $72,821.25.

Respondent admits that it owes the Claimant an additional sum of $3,136.00 for tree removal, and that this amount would have been paid except for the fact that the appropriation had lapsed. The parties have stipulated that this figure is the correct amount for tree removal rather than the $5,770.00 originally claimed.

Respondent does not deny that some amount of additional compensation may be due the Claimant for the additional excavation work admittedly performed in accordance with the direction of Respondent's resident engineer. The State says in its brief, "The Respondent concedes that the Claimant did a workmanlike job, and although paid for 9,304 cubic yards, did in fact remove more than that yardage." The questions for the court to decide here are question of fact, how much more yardage did the Claimant actually remove, and how much should the State pay for this additional work.

Respondent's position essentially consists of an attack upon the sufficiency of Claimant's evidence as to the amount of yardage excavated; that Claimant's calculations on the basis of semi-truckloads of dirt taken are inexact; that the efficiency factor referred to in Claim-

ant's exhibits is speculative, etc. We believe these objections should be waived under the rule we cited in *Egan v. State,* 24 Ill.Ct.Cl. 114, 117:

> Where the right of recovery exists, the defendant cannot escape liability because the damages are difficult of exact ascertainment.

Respondent also covers the other side of the coin by suggesting that Claimant unnecessarily excavated more yardage than called for. However, we believe that the weight of the evidence supports our conclusion that the additional yardage removed by the Claimant was required by authorized deviation from the plans under the direction of the State's Resident Engineer, Mr. Courtney Smith. The State partially, though grudgingly, agrees in its brief:

> The Respondent would agree that under Mr. Courtney Smith's direction, the Claimant might be forgiven and even compensated for moving the channel one way or the other, but this does not appear to justify gross overexcavation in any area.

A further qualified concession found in the State's brief reads as follows:

> From the testimony introduced in the record the Respondent would concede that the Claimant is perhaps justified in such deviations from the design as moving the center line of the channel over one way or the other as directed by the resident engineer, but only in those areas where this was done.

The Court, following the authorities of our reviewing courts, has frequently held that deviations from plans may be orally authorized by the Respondent notwithstanding contract provisions that no extras will be allowed except as ordered in writing. *Divane Brothers Electric Co. v. State of Illinois,* 22 Ill.Ct.Cl. 546, 553; *Salomon-Watertown Co. v. Union Asbestos and Rubber Co.,* 236 Ill.App. 583; *Theis v. Svoboda,* 116 Ill.App. 20; *City of Elgin v. Joselyn,* 36 Ill.App.301, 307; *Stahelin v. Board of Education of School District No. 4, DuPage County,* 87 Ill.App.2d 28, 230 N.E.2d 465; *City of Quincy v. Sturhahn,* 18 Ill.2d 604, 165 N.E.275.

In the case at bar it is undisputed from the record that the Claimant followed the directions of the resident engineer in deviating from the design throughout the course of the excavation with the exception of approximately 300 feet (Station 0+00 to 2+40) of this 6,500 foot project. The yardage removed outside the design in this 300 foot segment was 831.92 cubic yards.

Claimant testified that all excavation removed outside of the design limits here was replaced. However, we are giving the Respondent the benefit of this issue by reducing the claim for excavation by $3,702.04 (831.92 cubic yards x $4.45 per cubic yard).

The yardage figures accepted by the Court are taken from a booklet prepared by the Department of Transportation under the title:

CHANNEL EXCAVATION COMPUTATIONS
ADDISON CREEK
FR-198
(Prepared for Attorney General's office
Feb. 1975)

This document shows the total area excavated by the Claimant "Inside and Outside of Design Channel" was 15,567 cu. yds. Since it is clear to the court that the Claimant excavated in accordance with the directions of the resident engineer, Claimant is entitled to be paid for this amount of excavation work at the agreed rate of $4.45 per cu. yard. The above mentioned document shows that the Claimant has already been paid at said rate for 9,304 cubic yards. This and the 831.92 cu.yds. removed without authorization will be deducted in our calculation as follows:

Total amount of earth removed by the Claimant ..... .15,567.00 cu.yd.
Less excess yardage removed without authorization of
    Respondent's resident engineer .................... −831.92

Total compensable yardage removed ................ .14,735.08
Less yardage previously paid for by Respondent ...... 9,304.00

Compensable yardage remaining unpaid ............. 5,431.08

5,431.08 cu.yds. × \$4.45 per cu.yd. = \$24,168.30 due the Claimant for yardage excavated in addition to that previously allowed.

## II.

We find from the evidence, notwithstanding a very persuasive argument in Respondent's brief, that the Claimant is also entitled to damages for the extra work required due to the failure on the part of the Respondent to obtain certain rights-of-way shown on the plans and specifications prepared by the Respondent but not actually available to the contractor at the time of construction.

We believe the evidence supports Claimant's contentions that the Respondent has made the following admission of facts: (1) that right-of-way as shown on the plans and specifications furnished to the Claimant were not available at the time of the performance of the job; (2) that the unavailability of the right-of-way as shown on the plans caused damage to the Claimant and that the Respondent is liable for those damages; and (3) that an unstated portion of \$2,000 which Claimant was allowed as damages for lack of right-of-way, as well as for damages resulting from it being required to work under flooding conditions, is an arbitrary figure and not related to actual damages suffered by the Claimant as a result of the lack of right-of-way being available to him.

Respondent seeks to avoid the admissions of liability on the part of the Respondent in paying Claimant an arbitrary amount for damages due to the failure of the State to provide right-of-way for the Claimant by stating that this payment constituted a compromise settlement and is therefore not evidence of admission of liability. Respondent points out that our courts encourage compromise settlements as a matter of public policy, and such compromises are not deemed to be an admission of liability.

Claimant effectively answers that a compromise settlement must necessarily be bilateral. In this case there was no agreement on the part of the Claimant to accept the arbitrary sum of $2,000.00 in settlement of his claim for damages because of the lack of right-of-way or the flooding conditions, and no release was given by Claimant therefor.

Further, Respondent seeks to avoid the consequences of its admission of liability by stating that the Chief Engineer, Mr. Guillou, erroneously assumed that there was a failure to provide right-of-way. This suggestion is hardly tenable in view of the testimony of Courtney Smith, the Resident Engineer, as to the actual fact concerning lack of right-of-way, in view of the testimony of Emery Killpatrick, Chief of Operations of the Division of Waterways of the Department of Transportation of the State of Illinois, concerning the lack of right-of-way, and Claimant's Exhibit No. 8, being a memo from Killpatrick to Guillou dated March 30, 1971, some nine months after the completion of the project by the Claimant, to the effect that there was considerable cost to the State due to adjustments with the contractor because of right-of-way given to the State and shown on the plans and not actually available to the contractor at the time of construction.

This Court has invariably held that where erroneous statements are made in specifications prepared by the State, which specifications form part of the contract, and where a contractor relied upon the specifications and is misled as a result in the performance of the contract, the State is liable for damages resulting from the erroneous statements. *Peter J. Crowley Co. v. State of Illinois,* 10 Ill.Ct.Cl. 708. The rule is restated in *Arcole Construction Co. v. State of Illinois,* 11 Ill.Ct.Cl. 423, as follows:

> Where plans and specifications, forming part of contract for erection of a public improvement are prepared by State and relied on by party contracting with it for such erection, contain material misrepresentations, and such party is misled thereby, and as a result thereof is obliged, in performance of contract to do extra work, State is liable in damages for value thereof.

The dollar value of Claimant's damages for failure to have access to the said right-of-way was alleged in the complaint to be $20,000. At the hearing the amount was reduced to $15,311.80. In Claimant's brief the damages claimed for lack of right-of-way was further reduced to an amount we find realistic and acceptable.

The Claimant calculated the damage due by reason of being required to use only public streets and alleys from which to take excavation from the channel as being in the sum of $13,314.61 based upon a reduction of efficiency of 62 percent. The lack of right-of-way problem was not encountered during the first nine days. During these nine days the Claimant excavated an average amount of 837 cubic yards of dirt per day. During the period in which Claimant was deprived of right-of-way his average daily excavation was 320 cubic yards so that efficiency was impaired by 62 percent. In this area the Claimant excavated 4,171 cubic yards at additional costs to himself. Claimant therefore computes his damage proximately caused by lack of right-of-way at $11,499.25 [62 percent or $4.45/yd × 4,171 yards].

Since the impairment of efficiency was also present in respect to tree removal by being required to haul trees in areas not available as right-of-way, as shown on the plans, Claimant computes his damage in this regard at $1,915.36 [62 percent at 2.00/inch × 1,464 inches]. Thus, the total damages resulted from the lack of right-of-way is $13,314.61 based upon reduction of efficiency.

Although the Respondent questions Claimant's method of calculation, no evidence was introduced by the Respondent tending to show any other computation of the damage flowing from the lack of right-of-way available to the Claimant, nor was any evidence introduced tending to show that the Claimant failed to mitigate damages in any respects. The Claimant's ascertainment of damages was the best evidence available and is accepted by the court. See *Johnson v. City of Galva,* 316 Ill. 598, 147 N.E. 453; *Egan v. State,* 24 Ill.Ct.Cl. 114, 117. The sum of $2,000 will be deducted from the total amount of the claim as having already been paid by the state. Therefore the damages are reduced to $11,314.61.

### III.

We find that the Respondent is *not* liable for the $12,961 claimed for extras by reason of the Claimant being compelled to work in flooded conditions during the performance of the contract.

The record does not support the Claimant's contention that he was given assurances relating to the water levels by the Respondent's authorized representatives. Nowhere in the contract is there to be found any reference as to the condition of the channels. This is obvious not only from an examination of the contract but from the fact that nowhere in the record was Claimant able to produce any reference in the contract to the condition of

said channels. Therefore the Claimant has not shown any negligence on the part of the State connected with the failure to have certain culverts lowered prior to the Claimant's excavation in order to lower the water levels. Claimant has failed to show sufficient proof of duty, negligence, breach or damages, and will be denied any claim based on flooded conditions of the channel.

## IV.

We find that the Respondent is *not* liable for the $2,440.35 claimed for extra seeding and mulching of an additional 2.871 acres of land. In order to accommodate Claimant, and make a payment for items not obviously within the contract, Mr. John C. Guillou, Chief Engineer of the Division of Waterways, approved the payment of an additional 860 yards at $4.45 per yard rounded off to $3,380.00. This approval was given in response to a letter dated September 14, 1970, from E. & E. Hauling to the Division of Waterways concerning extra work performed under its contract here at issue. In Claimant's Exhibit No. 10, Claimant listed six items in paragraph 1 through 6 for which Claimant was seeking additional compensation, including extra seeding and mulching of approximately 2.75 acres of village land. According to Claimant's Exhibit No. 9, Mr. Guillou approved a payment of $3,830.00 of which $1,830.00, or about half of the $3,660.00 requested by Claimant in its letter of September 14, 1970, was being paid by the State to cover those claims listed by the Claimant. For the other half, we concur in Respondent's suggestion that the contractor should look to local interests for payment for additional work done at the request of various mayors and village officials.

Respondent argues, and we agree, that the contractor is asking for payment as an "extra" item for seeding, mulching and fertilizing which was not covered by the

contract and for which Claimant should not be further compensated over and above the additional payment which was approved by Mr. Guillou. Claimant concedes in its Exhibit No. 10, "I understand that, according to my contract, many of these *extras* are not permissible for payment. . . ."

## V.

Respondent is liable in the sum of $3,136.00 for tree removal as was agreed upon by the Respondent and the Claimant in a joint stipulation. This amount was not paid by the Respondent only because the appropriation had lapsed.

To summarize and recapitulate, we find that Claimant is entitled to an award as follows:

I. For yardage of excavation in addition to that allowed: 5,431.08 yards at $4.45 a yard .................................... $24,168.30

II. For damages sustained by the Claimant as a result of State's failure to provide right-of-way (after deducting $2,000.00 already paid) ............................................................ 11,314.61

III. For extra expenses claimed as a result of flooding ........... None

IV. For extra expenses claimed for additional seeding and mulching ...................................................... None

V. For tree removal as agreed by the parties in a joint stipulation ...................................................... 3,136.00

TOTAL ............................................. $38,618.91

The Claimant is hereby awarded compensation for additional contractual services performed in the total sum of Thirty-Eight Thousand Six Hundred Eighteen and 91/100 Dollars, ($38,618.91).