**Royal BACKES, as father and next friend of Michelle L. Backes, Kathy L. Backes, and Curt A. Backes, all minors, Plaintiffs-Appellants,**

v.

**The VALSPAR CORPORATION, Defendant-Appellee.**

No. 85–1630.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1985.

Decided Feb. 3, 1986.

Bernard P. Reese, Jr., Reese, Reese & Bagley, Rockford, Ill., for plaintiffs-appellants.

Leo G. Stern, Fredrickson & Byron, P.A., Minneapolis, Minn., for defendant-appellee.

Before CUDAHY and POSNER, Circuit Judges, and GRANT, Senior District Judge.*

POSNER, Circuit Judge.

The district court granted summary judgment for the defendant, Valspar, in this diversity tort suit brought in 1981 by Royal Backes on behalf of his three chil-

---

* Hon. Robert A. Grant of the Northern District of    Indiana, sitting by designation.

dren, and dismissed the complaint. Backes has appealed. We must decide whether the district judge was right to find that Valspar had carried its burden of proving that there was no genuine issue of material fact. Fed.R.Civ.P. 56(c).

Between 1976 and 1978 the Backes family lived on what was known as the Johnson property, near Rockford, Illinois. During that period one of the children, a 10-year-old girl, developed rheumatoid arthritis. A medical examination revealed lead in her bloodstream. Another child developed an ovarian condition and an abscessed appendix, while the third had learning difficulties. The children's health and mental acuity improved after they moved away. Valspar, a manufacturer of paints, had until 1972 stored wastes on the Tipton property, which adjoins the Johnson property. The wastes contained phenols, lead, mercury, and other materials hazardous to human health. See, e.g., U.S. Environmental Protection Agency, Ambient Water Quality Criteria for Phenol, p. C–27 (EPA 440/5–80–066 Oct. 1980) (tab. 7) (phenols); Mitre Corp., The Environmental Lead Problem 49–60 (EPA 570/9–79–003 May 1979) (lead).

Dennis Johnson (no relation to the owner of the Johnson property), a chemist formerly employed by the Illinois Environmental Protection Agency, had in 1975, shortly before the Backes moved onto the Johnson property, taken water samples from two wells on the property. Both contained phenols in amounts several times higher than considered safe for human consumption. He told the Johnsons not to drink the water. Other wells, in the vicinity of the Johnson property, were also contaminated. In 1980, after the Backes left, Dennis Johnson found phenolic paint residue on the Johnson property. It had come, he determined, from drums that Valspar had placed on the Tipton property before 1972. He opined in his affidavit in the district court that the two wells on the Johnson property had been contaminated throughout the period in which the Backes had lived there and that the children's medical problems "might or could have been caused by the drinking of the water from the wells in

question, which in my opinion continued during 1976 and 1977 to be contaminated with phenolic content and thus hazardous to injestion [sic] by human beings or animals. Such medical problems are consistent with the medical problems demonstrated by the Johnsons. One of the probable causes for that would be the disposing of hazardous wastes, particularly as I have noted the disposal of phenolic content...."

Valspar pointed out that only one of the children, Kathy (the one who had developed arthritis), had been found to have an abnormal level of a mineral, namely lead, in her body. Valspar submitted an affidavit from a chemist which stated that Valspar had used "minute quantities of lead" in the manufacturing process that had produced the wastes stored on the Tipton property. Valspar also pointed out that no doctor had suggested that any of the children's symptoms were related to the water they had drunk and that a lab report of a water sample taken from one of the wells on the Johnson property in 1977 had stated that the sample did not contain unsafe levels of either bacteria or nitrates.

The district judge granted summary judgment on the ground that the plaintiff had not presented competent evidence that Valspar's wastes had caused the children's ailments. The judge discounted Dennis Johnson's affidavit on the ground that Johnson had not been shown to be qualified to testify either about the contents of Valspar's wastes or about the probable causes of the children's illnesses. The judge thought that without the affidavit the evidence of causality was too weak to create a triable issue.

■ If the record before us were the record of a trial, and the judge had granted a motion by Valspar for a directed verdict, we might well affirm; the evidence of causality is extremely weak, perhaps too weak to persuade a reasonable factfinder that the plaintiff had proved that Valspar was a cause of any of the children's ailments. But at the summary judgment stage the burden of proof is on the moving party, in

this case the defendant, to show that the outcome of a trial would be a foregone conclusion because with discovery complete the opposing party has turned up no evidence of an essential element of his case or defense. See, e.g., *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Ross v. Franzen*, 777 F.2d 1216, 1220 (7th Cir.1985). (Whether the defendant can ever carry his burden *without submitting evidence,* the issue that divided the panel in *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181 (D.C.Cir.), cert. granted under the name of *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 285 (1985), is not a question in this case.)

If Dennis Johnson was competent to offer opinion evidence, the plaintiff put in enough evidence, though only barely so, to defeat a motion for summary judgment. Johnson's affidavit does not recite his qualifications but does mention that he testified for the Johnsons in their suit in state court against Valspar, a suit in which Valspar won a jury verdict that was upheld on appeal. The fact that Johnson was allowed to testify as an expert witness in a closely related suit is some indication that he is qualified to give expert testimony in this suit. And though the affidavit does not say that Johnson tested the wells in the course of his official duties for the Illinois EPA, the state court's opinion in *Johnson v. Tipton*, 103 Ill.App.3d 291, 293, 59 Ill. Dec. 179, 183, 431 N.E.2d 464, 468 (1982), attached to Backes' reply to the motion for summary judgment, says so. It makes no difference that Dennis Johnson failed to explain the basis for his opinion that the phenols on the Johnson property had come from the drums of Valspar's wastes stored on the Tipton property; for there is other evidence in the record, as yet uncontradicted, that the drums contained phenols.

We also disagree that Dennis Johnson was unqualified to opine on the health effects of water contaminated by phenols. His job was to test wells for the state's environmental protection agency in order to see whether they were contaminated and therefore unsafe to drink, and apparently the job included interpreting the test results, for he thought it his duty to tell the Johnsons to stop drinking the water. This is some evidence (not great) that he has expert knowledge about the health effects of phenol-contaminated water—which is to say "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Fed.R.Evid. 702. If at trial Valspar challenges Dennis Johnson's qualifications and the judge conducts a voir dire to determine them, it may turn out that Johnson is unqualified, see, e.g., *Gates v. United States*, 707 F.2d 1141, 1144–45 (10th Cir.1983) (per curiam), but no voir dire has been conducted yet.

■ The judge suggested that only a doctor can opine on the causes of illness. The law is to the contrary. See, e.g., *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1136 (5th Cir.1985); *Jenkins v. United States*, 307 F.2d 637, 644 (D.C.Cir.1962) (en banc). The court in *Jenkins* cited cases where nonphysicians were allowed to testify to the effects of electrical shock on the human body and a toxicologist was allowed to testify about the effect of an acid on the human eye; more recent cases allowing toxicologists to testify about the effects of poisonous substances on human health include *State v. Sugar*, 100 N.J. 214, 242–43, 495 A.2d 90, 105 (1985), and *Nicholas v. City of Alton*, 107 Ill.App.3d 404, 437 N.E.2d 757 (1982). No doubt Dennis Johnson is incompetent to diagnose a case of rheumatoid arthritis; but if as happened here he is shown a medical report in which a child is diagnosed as suffering from rheumatoid arthritis, he may be competent to give an opinion on the cause of that disease. He may, indeed, be more competent to give such an opinion than the doctor who examined the child. The doctor did not know that she had drunk from wells that may have been contaminated. And it is not much use having a doctor examine her now, because she has long since stopped drinking the contaminated water, and the phenols may have been metabolized and have disappeared—after injuring her

health. See U.S. Environmental Protection Agency, Ambient Water Quality Criteria for Phenol, *supra*, at C–19.

If Dennis Johnson's affidavit were incredible, this would be grounds for deeming him unqualified to give an opinion. But it is not incredible. Although unscientific people (judges and jurors, for example) may give too much weight to mere coincidence, see e.g., Tversky & Kahneman, Judgment Under Uncertainty: Heuristic and Biases, in Judgment Under Uncertainty 3 (Kahneman, Slovic & Tversky eds. 1982), the Backes children did experience an unusual concentration of ailments rare in children, while drinking water from wells that may well have been contaminated; and though it may all just be a giant coincidence, Dennis Johnson's affidavit, plausibly, suggests not. Although the wording of the affidavit is rather mealy-mouthed, it attests to a causal relationship with enough definitiveness to resist summary judgment. At trial the depth of Johnson's confidence can be probed.

Decisive weight cannot be given the negative test results in 1977. The report suggests that the water was not even tested for any of the chemicals that allegedly injured the children. As Johnson pointed out in his affidavit, moreover, a single negative reading is not dispositive. The level of contamination may fluctuate; a heavy rain, for example, might dilute the contaminants sufficiently to make the water test normal. Even if the water was pure in 1977, it doesn't follow that it was pure in 1976, when the Backes family moved onto the property and began drinking the water; and their ailments could have stemmed from contamination in the earlier part of their stay.

Besides Dennis Johnson's affidavit, there is the matter of the lead in Kathy's body. Valspar's affidavit states that Valspar used "minute" amounts of lead in the resins whose waste byproducts were stored on the Tipton property. But "minute" is not zero; and the state's environmental protection agency in 1980 and 1981 found excessive amounts of lead in the soil and in the surface water of the Tipton property. Moreover, Valspar would not (as it thinks) get off the liability hook just by showing that some of Kathy's lead poisoning (if that is what she had) was due to lead dumped by other users of the Tipton site. That would just make Valspar a joint rather than sole tortfeasor.

■ Weak as the record is, it provides some grounding for a belief that the children's symptoms, particularly Kathy's, were due at least in part to wastes dumped by Valspar. Under Illinois law, which the parties concede governs the substantive issues in this diversity suit, Backes cannot prevail without showing a reasonable certainty that Valspar was the cause of his children's ailments, and this is a requirement that the Illinois courts take seriously. See, e.g., *Johnston v. City of Galva*, 316 Ill. 598, 604–05, 147 N.E. 453, 455 (1925); *Illinois Bell Tel. Co. v. Purex Corp.*, 90 Ill.App.3d 690, 698–99, 45 Ill.Dec. 773, 778–79, 413 N.E.2d 106, 111–12 (1980). But a *reasonable* certainty is not a certainty; it is a probability. We are mindful of the formidable difficulties of proving causation in toxic-waste cases (see, e.g., Rosenberg, *The Causal Connection in Mass Exposure Cases: A "Public Law" Vision of the Tort System*, 97 Harv.L.Rev. 851, 855–59 (1984); Ginsberg & Weiss, *Common Law Liability for Toxic Torts: A Phantom Remedy*, 9 Hofstra L.Rev. 859, 922–23 (1981)); and we are skeptical that Backes can—without mounting a more formidable scientific (including epidemiological, see Black & Lilienfeld, *Epidemiologic Proof in Toxic Tort Litigation*, 52 Fordham L.Rev. 732 (1984)) case than he seems prepared to do—persuade a jury that Valspar was a cause of any of the children's illnesses. But we do not think that he can be prevented, on the basis of the record that was before the district court when it granted Valspar's motion for summary judgment, from trying to prove causation. Backes put in enough evidence—the medical reports, his and his wife's depositions, Dennis Johnson's affida-

vit—to create a genuine issue of fact concerning Valspar's causal responsibility.

REVERSED.